572 S.E.2d 473

**The STATE, Respondent,**

v.

**Rodney Maurice SMITH, Appellant.**

**No. 3567.**

Court of Appeals of South Carolina.

Heard Jan. 8, 2002.
Decided Nov. 12, 2002.

134

Senior Assistant Appellate Defender Wanda H. Haile, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Robert E. Bogan, Senior Assistant Attorney General Charles H. Richardson, all of Columbia; and Solicitor Thomas E. Pope, of York, for respondent.

SHULER, J.:

Rodney Maurice Smith appeals his conviction for second degree lynching, arguing the trial court erred in failing to direct a verdict. We agree and reverse.

## FACTS/PROCEDURAL HISTORY

On September 2, 1998, Carlos Parson and his friend Ebay Moore were on their way to a nearby store in York to buy beer.[1] As they approached California Street, where "a lot of young men" were hanging out, Parson noticed a black truck

---

1. Upon examination at the hospital, Parson registered a blood alcohol content of .23 percent. A trial expert testified that level of intoxication would render someone of Parson's size significantly impaired.

pull up and stop. Moore, recognizing Rodney Smith, approached the vehicle. When Parson also approached, Moore introduced Smith, whom Parson did not know, as "Tee Top."

Parson then told Moore he was ready to go on to the store. At that, Smith got out of the truck and said to Parson: "You don't know me like that to be talking to me like that." Although Parson denied having said anything to Smith, Smith "raised his hand" and said "Man, I'm tired of these fake-ass niggers trying to handle me any kind of way." The next thing Parson knew, Smith stepped up and hit him.

Immediately thereafter, Tori Rawlinson, whom Parson did know, also struck him. Parson fell to the ground. Although he tried to get up, Smith and Rawlinson continued to beat him. At that point, Lavonne Hanna, Smith's girlfriend who was not known to Parson, got out of the truck and stabbed Parson several times, leaving a seventeen-inch laceration across Parson's stomach and a gash on his eyeball that nearly blinded him. Parson did not see the weapon, which was never identified or recovered. As the police arrived at the scene, they passed a black truck headed in the opposite direction with three occupants; both officers identified Hanna as the driver and one officer identified Rawlinson as one of the passengers.

On November 12, 1998, a York County grand jury indicted Rawlinson, Hanna, and Smith on charges of assault and battery with intent to kill (ABIK) and lynching, second degree; Hanna was also indicted for possession of a weapon during the commission of a violent crime. In a joint trial, held February 8, 1999, a jury convicted all three defendants of second degree lynching and assault and battery of a high and aggravated nature (ABHAN) as a lesser included offense of ABIK. The jury also convicted Hanna on the weapon possession charge. Thereafter, the trial court sentenced Smith to twelve years imprisonment for lynching and ten years concurrent for ABHAN; both were consecutive to a sentence Smith already was serving for a parole violation. The court also imposed joint restitution totaling $31,000 on all three defendants.

Pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and *State v. Williams,* 305 S.C. 116, 406 S.E.2d 357 (1991), Smith's appellate counsel filed a

brief along with a petition to be relieved, stating her examination of the record indicated the appeal was without merit. Following our *Anders* review, this Court ordered the parties to brief the following issue:

> Whether the trial court erred in refusing to grant Appellant's motion for directed verdict as to Second Degree Lynching, where the State failed to prove the defendants acted for the premeditated purpose and with the premeditated intent to commit an act of violence upon the person of another, an essential element of the crime.

Thus, the sole issue in this appeal is whether the trial court erred in failing to direct a verdict on the charge of second degree lynching.

## LAW/ANALYSIS

### Standard of Review

In considering a motion for directed verdict in a criminal case, all evidence is viewed in the light most favorable to the State. *State v. McHoney*, 344 S.C. 85, 544 S.E.2d 30 (2001); *State v. Fennell*, 340 S.C. 266, 531 S.E.2d 512 (2000). The trial court is "concerned with the existence or non-existence of evidence, not its weight." *State v. Pinckney*, 339 S.C. 346, 349, 529 S.E.2d 526, 527 (2000). Thus, if the State presents direct or substantial circumstantial evidence reasonably tending to prove guilt, or from which guilt can be logically deduced, the directed verdict motion is properly denied. *State v. Lollis*, 343 S.C. 580, 541 S.E.2d 254 (2001). On the other hand, a defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged. *State v. Buckmon*, 347 S.C. 316, 555 S.E.2d 402 (2001); *McHoney*, 344 S.C. at 97, 544 S.E.2d at 36.

### Discussion

Smith argues the trial court should have granted his motion for directed verdict because the State failed to present evidence that he and his co-defendants assembled with the common purpose and intent of committing an act of violence against Parson. We agree.

■ Second degree lynching, a felony, is defined as "[a]ny act of violence inflicted by a mob upon the body of another person and from which death does not result. . . ." S.C.Code Ann. § 16–3–220 (1985); *see Knox v. State,* 340 S.C. 81, 530 S.E.2d 887 (2000). "Mob" is further defined as "the assemblage of two or more persons, without color or authority of law, for *the premeditated purpose and with the premeditated intent* of committing an act of violence upon the person of another." S.C.Code Ann. § 16–3–230 (1985) (emphasis added); *Knox,* 340 S.C. at 84, 530 S.E.2d at 888. Although "[t]he common intent to do violence" may be formed before or during the assemblage, *State v. Barksdale,* 311 S.C. 210, 214, 428 S.E.2d 498, 500 (Ct.App.1993), to sustain a conviction for lynching the State must produce at least some evidence of premeditation. *See* § 16–3–230; *Barksdale,* 311 S.C. at 214, 428 S.E.2d at 501 ("The State is required to prove every element of the crime for which an accused is charged.").

Premeditation connotes "willful deliberation and planning" or "conscious consideration" preceding a particular act. *Black's Law Dictionary* 1199 (7th ed.1999); *see also Webster's New World College Dictionary* 1134 (4th ed.1999) (defining legal definition of premeditation as "a degree of planning and forethought sufficient to show intent to commit an act"). By definition then, the premeditated purpose and intent underlying a charge of lynching cannot be spontaneous.

At trial, the State called three witnesses who testified to the assault on Parson: Parson himself; Tina Hughes, an eyewitness; and Lavonne Hanna, Smith's girlfriend and co-defendant. Parson's testimony revealed he was talking to Moore when Smith inexplicably said "You don't know me like that . . ." and began hitting him. According to Parson, after Smith struck him he saw "Tori Rawlinson come across and hit me" and he fell to the ground. When Parson attempted to get up, Hanna, who had exited the truck, raised her hand and cut him.

Hughes essentially confirmed Parson's account, testifying that after Parson "mumbled something," Smith made the "you don't know me" remark, got out of the truck, and hit Parson in the mouth. Hughes further testified Rawlinson then "came in and hit [Parson] in the back of the head. And when [Parson] had fell, that's when [Hanna] came with the blade and started

cutting him." Although Hanna testified she and Smith struck Parson in self-defense, she also stated Parson initially approached Smith and asked if he was interested in buying some crack or "weed." In Hanna's account, that was when Smith replied: "Man, you don't even know me like that to ask me something like that."

Thus, all of the testimonial evidence presented by the State indicated Smith became upset at something Parson said, jumped out of the truck, and hit him. Moreover, it was undisputed Rawlinson came over *from across the street* and hit Parson in the back of the head; he neither arrived with Smith and Hanna nor was with them when the incident began. Finally, the evidence showed that as Smith and Rawlinson independently attacked Parson, Hanna exited the truck and cut Parson with an unknown weapon. In other words, the combined testimony evinced an impulsive attack on Parson by Smith that Rawlinson and Hanna later joined.

These facts distinguish this case from *Barksdale, supra,* in which this Court upheld several convictions for first degree lynching following an altercation outside a nightclub. In *Barksdale,* the defendants were involved in a verbal confrontation in which the victim intervened. Afterward, "[a]lthough the [defendants] started to leave, *they decided to return and fight* with [the victim]." *Barksdale,* 311 S.C. at 212, 428 S.E.2d at 499 (emphasis added). The defendants then took turns assaulting the victim, and the victim later died from his injuries. On appeal, the State successfully argued that the defendants' intent in assembling was transformed from a lawful purpose to an unlawful one as "evidenced by the fact [they] *returned to the club* with the *expressed purpose and intent* to commit an act of violence upon the victim." *Id.* at 215, 428 S.E.2d at 501 (emphasis added).

 While we agree the State may demonstrate the intent element in a lynching case through "positive" testimonial evidence or circumstantial inferences, *id.* at 214, 428 S.E.2d at 500, the record before us is devoid of any evidence, direct or circumstantial, tending to prove Smith, Hanna, and Rawlinson acted with the premeditated purpose and intent required to sustain a conviction. Accordingly, as Smith and his co-defendants did not constitute a "mob" within the meaning of the

lynching statute, Smith's conviction for second degree lynching is

**REVERSED.**

CURETON and STILWELL, JJ., concur.