755 S.E.2d 457

**The STATE, Respondent,**

v.

**Beulah Ruth BUTLER, Petitioner.**

Appellate Case No. 2011–194608.

No. 27365.

Supreme Court of South Carolina.

Heard Nov. 20, 2013.

Decided March 12, 2014.

Chief Appellate Defender Robert M. Dudek, of Columbia, for Petitioner.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Mark R. Farthing, all of Columbia, and Solicitor Donald V. Myers, of Lexington, for Respondent.

Chief Justice TOAL.

Beulah Ruth Butler (Petitioner) appeals the court of appeals' decision affirming her convictions for voluntary manslaughter and possession of a firearm or a knife during the commission of a violent crime, claiming the court of appeals erred in affirming the denial of her motion for a directed verdict on self-defense. We affirm.

## FACTS/PROCEDURAL BACKGROUND

On July 23, 2006, Petitioner and her boyfriend, Tarquinius Lenard Russell (the victim), patronized a bar in the Five Points area of Columbia. After leaving the bar, the victim became very angry when Petitioner answered a telephone call from another man. According to Petitioner,[1] once they arrived at Petitioner's home, the victim punched her, kicked her, and pushed her down onto the bed and choked her until she passed out. After she awoke, the victim picked up a DVD/VCR player, swung it at her, and hit her in the face. Petitioner went into the kitchen, planning to run out the back door, but before she could reach the door, the victim grabbed her by the shirt. Petitioner reached for a knife that was on the kitchen table and "started swinging, telling him to get away from [her]." When Petitioner stopped swinging the knife, she "took off again to go out the front door," but the victim came "running over the couch" toward her. At that point, Petitioner began swinging the knife again and the couple struggled over control of the knife. The victim wrapped his arms around her from behind and tried to cut her with the knife, which was pointing down. Petitioner testified:

---

1. At trial, Petitioner testified in her own defense. Petitioner described the volatile nature of her relationship with the victim, including many incidents in which the victim hit her or the couple fought. According to Petitioner, she never hit the victim first, although she acknowledged that she often fought back. In addition, Dr. Lois Veronen, a clinical psychologist and expert in battered woman syndrome, testified that Petitioner "definitely fits the description of a battered woman."

He was saying "I will kill you. I'm going to kill you." He was trying to make the knife stab me, and that's how I got the nicks on my legs. I just remember I was holding on real tight, and I was like, Lord, if he gets this knife, he's going to kill me, and that's when he let go.

When the victim let go and she turned around, she saw him "coming [ ] down onto the knife." [2]

Police responded to Petitioner's home after a neighbor telephoned 911. When police arrived, the home was in disarray and Petitioner was on the floor, crying and attempting to comfort the victim, who had sustained a knife wound to the chest. The victim was transported to the hospital, where he died following surgery.[3] When police officers first asked Petitioner what happened, Petitioner mumbled that the victim "rolled over on the knife." She further stated that "[h]e was coming at me over the couch, and I just did it." Thereafter, she told an investigator that the victim jumped over the couch and "landed on" the knife. On cross-examination, Petitioner testified that she did not remember making these statements to police. Further, Petitioner vehemently denied stabbing the victim and maintained that the victim received the knife wound from falling on the knife. However, Petitioner stated further:

He didn't fall on it. I guess it's just the way his body, when I turned around, ... he was falling.... It was an accident.... I was trying to protect myself. I was trying to protect myself but the initial stab, I believe, [was] an accident. I wasn't swinging at him. I just turned around.

The night of the incident, witnesses observed a scratch on Petitioner's collarbone area, two small cuts on her left knee, two small cuts on her left thigh, and a cut on her bottom lip. After being taken into police custody, Petitioner declined medical attention. In response to standard questions, Peti-

---

**2.** The State presented evidence that the victim's blood was found on a lamp, the living room carpet, the DVD/VCR player, a vacuum cleaner, the kitchen door frame, the living room and bedroom walls, and on the shirt Petitioner wore to Five Points that night.

**3.** An autopsy revealed that, in addition to the stab wound to the victim's chest which was the cause of his death, he sustained five knife wounds to the sides of his body and several defense wounds.

tioner stated that she had not suffered a head injury in the preceding seventy-two hours. Photographs taken three days after the incident showed that Petitioner's lip was swollen with a small cut and scratches on her lower neck and upper chest, but did not indicate any bruising around Petitioner's neck.

At the conclusion of the State's evidence, Petitioner's counsel moved for a directed verdict on self-defense, arguing that South Carolina law requires the State to bear the burden of disproving self-defense and that the State had failed to disprove every element of self-defense. Petitioner's counsel renewed the motion at the close of the evidentiary phase of trial. The trial court denied the motions, stating, in part, that "the standard I must apply at the directed verdict stage is such that there is either direct or substantial circumstantial evidence to go forward at this stage for a jury's verdict" and that because of Petitioner's conflicting statements, there was an issue of credibility for the jury.

The trial court charged the jury on the law of self-defense,[4] accident, defense of habitation, and the perceptions of battered persons. The jury convicted Petitioner as indicted. The trial court sentenced Petitioner to an aggregate term of nine years' imprisonment, but ruled that Petitioner was entitled to early parole eligibility based on the presentation of credible evidence regarding a history of criminal domestic violence.

The court of appeals affirmed Petitioner's convictions, concluding that the State produced sufficient evidence showing that Petitioner did not act in self-defense and viewing the evidence in the light most favorable to the State, the evidence supported submitting the case to the jury. *State v. Butler*, Op. No.2011–UP–127(S.C. Ct.App. filed Mar. 28, 2011).

Petitioner sought a writ of certiorari to review the court of appeals' opinion. This Court granted the writ of certiorari pursuant to Rule 242, SCACR.

## ISSUES PRESENTED

I. Whether the trial court erred in refusing to apply a standard requiring the State to disprove self-defense beyond a reasonable doubt at the directed verdict stage?

---

4. In instructing the jury on the law of self-defense, the trial court stated that the "State has the burden of disproving self-defense by proof beyond a reasonable doubt."

II. Whether the court of appeals erred in affirming the denial of Petitioner's motion for a directed verdict on self-defense?

## LAW/ANALYSIS

■ Petitioner argues the trial court erred by refusing to apply a standard requiring the State to disprove self-defense beyond a reasonable doubt at the directed verdict stage. We disagree.

■ " 'When ruling on a motion for a directed verdict, the trial judge is concerned with the existence of evidence, not its weight.' " *State v. Wiggins,* 330 S.C. 538, 544–45, 500 S.E.2d 489, 492–93 (1998) (quoting *State v. Long,* 325 S.C. 59, 62, 480 S.E.2d 62, 63 (1997)) (affirming the denial of a directed verdict on self-defense because the State presented sufficient evidence to create a jury issue as to self-defense). In contrast, "when self-defense is properly submitted to the jury, the defendant is entitled to a charge, if requested, that the State has the burden of disproving self-defense by proof beyond a reasonable doubt." *State v. Burkhart,* 350 S.C. 252, 262, 565 S.E.2d 298, 303 (2002) (citing *State v. Addison,* 343 S.C. 290, 293, 540 S.E.2d 449, 451 (2000); *Wiggins,* 330 S.C. at 544, 500 S.E.2d at 492–93).

■ On appeal from the denial of a directed verdict, this Court views the evidence and all reasonable inferences in the light most favorable to the State. *State v. Weston,* 367 S.C. 279, 292, 625 S.E.2d 641, 648 (2006). "If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, the Court must find the case was properly submitted to the jury." *Id.* (citing *State v. Cherry,* 361 S.C. 588, 593–94, 606 S.E.2d 475, 478 (2004)).

We disagree with Petitioner's reliance on *State v. Dickey,* 394 S.C. 491, 716 S.E.2d 97 (2011), to support her contention that the trial court applied an incorrect standard at the directed verdict stage. In *Dickey,* the Court held that the defendant was entitled to a directed verdict on the issue of self-defense because the *uncontroverted* facts established self-defense *as a matter of law. Id.* at 501, 716 S.E.2d at 102. Therefore, even viewing the facts in a light most favorable to the State, the Court found that the evidence established that

the defendant acted in self-defense. *Id.* at 503, 716 S.E.2d at 103.

Petitioner's case is distinguishable from *Dickey.* Unlike in *Dickey,* where the facts did not give rise to a jury issue, the evidence in the present case created a jury issue on the issue of self-defense. *See State v. Richburg,* 250 S.C. 451, 459, 158 S.E.2d 769, 772 (1968) ("When the evidence is susceptible of more than one reasonable inference, questions of fact must be submitted to the jury."). For example, as the trial court recognized when ruling on the directed verdict motion, Petitioner's various, inconsistent accounts of how the stabbing occurred created credibility issues and questions of fact to be resolved by the jury. Furthermore, Petitioner's injuries—a swollen lip, scratches and cuts, but no bruising around the neck—were not consistent with her testimony that the victim struck her in the head with the DVD/VCR player, punched and kicked her, and choked her into unconsciousness. Therefore, we find the trial court, applying the correct standard at the directed verdict stage, properly submitted the case to the jury because the State presented sufficient evidence to disprove self-defense.[5]

Based upon our conclusion that there was sufficient evidence to create a jury issue, and viewing the evidence in the light most favorable to the State, we agree with the court of appeals' decision to affirm the denial of Petitioner's motion for a directed verdict on self-defense.

· CONCLUSION

For the foregoing reasons, the court of appeals' decision is **AFFIRMED.**

KITTREDGE and HEARN, JJ., concur.

PLEICONES, J., concurring in result only.

BEATTY, J., concurring in a separate opinion.

---

5. We note that the trial court gave a proper jury instruction on self-defense. *See Burkhart,* 350 S.C. at 262, 565 S.E.2d at 303.

Justice BEATTY.

I agree with the majority's decision to uphold Petitioner's convictions. However, I concur in result because I take exception to the majority's attempt to distinguish *State v. Dickey*, 394 S.C. 491, 716 S.E.2d 97 (2011). As is evident from my dissent in *Dickey*, I believe that case was incorrectly decided and, as a result, has now created confusion regarding the standard to be applied when a defendant makes a motion for a directed verdict on the basis of self-defense.

In *Dickey*, the defendant, who was a security guard at a Columbia apartment building, was charged with the murder of a resident's guest. *Dickey*, 394 S.C. at 495, 716 S.E.2d at 98. The guest, who was indisputably intoxicated and the cause of a disturbance in the apartment building, was ordered to leave by Dickey. *Id.* Because the guest became verbally aggressive, Dickey called police to report the disturbance. *Id.* As the guest and his friend exited the building, Dickey followed them outside to the public sidewalk. *Id.* An eyewitness testified that the men shouted obscenities and threatened to harm Dickey as they walked away. *Id.* According to Dickey, the guest and his friend walked to the corner of Pendleton Street and Sumter Street, which was approximately 68 feet from Dickey, then turned around. *Id.* at 508, 716 S.E.2d at 106. As the guest walked back towards the apartment building, Dickey pulled a gun from his pocket in order to "discourage the two men from attacking him." *Id.* at 497, 716 S.E.2d at 99–100. Dickey claimed the guest appeared to reach for a weapon as he continued to advance in an aggressive manner. *Id.* at 497, 716 S.E.2d at 100. Without warning, Dickey fired three shots, killing the guest. *Id.*

At trial, Dickey moved for a directed verdict of acquittal on the ground of self-defense. *Id.* at 498, 716 S.E.2d at 100. The trial judge denied this motion and ultimately charged the jury on murder and voluntary manslaughter, as well as the affirmative defense of self-defense. *Id.* The jury convicted Dickey of voluntary manslaughter. *Id.* The Court of Appeals affirmed. *Id.* This Court granted Dickey's petition for a writ of certiorari to review the decision of the Court of Appeals. *Id.*

A majority of this Court reversed, finding Dickey was entitled to a directed verdict of acquittal on the ground of self-

defense as "the State failed to disprove the elements of self-defense beyond a reasonable doubt." [6] *Id.* at 503, 716 S.E.2d at 103. In reaching this conclusion, the majority found *as a matter of law* that Dickey: (1) was without fault in bringing about the difficulty; (2) believed he was in imminent danger of losing his life, or sustaining serious bodily injury, and that a reasonable person would have entertained the same belief; and (3) had no probable means of avoiding the danger than to act as he did. *Id.* at 499–503, 716 S.E.2d at 101–03.

In my dissent, I expressed disagreement with the majority's decision because I believed the State presented sufficient evidence to submit the case to the jury. *Id.* at 509, 716 S.E.2d at 106 (Beatty, J., dissenting). Specifically, I noted that the State's evidence created a question of fact as to whether Dickey: (1) was without fault in bringing on the conflict because he followed the guest and his friend out of the building even though he could have remained inside behind the safety of the locked doors to wait for police; (2) had a reasonable belief that he was in imminent danger of losing his life or sustaining serious bodily injury, given he readily exited the locked building and continued the confrontation outside of the apartment building; and (3) had a duty to retreat as he was not within the curtilage of the apartment building at the time of the shooting and there was evidence that he was physically able to return to the safety of the building. *Id.* at 505–09, 716 S.E.2d at 104–06.

Today, I adhere to my dissent and write to highlight the confusion created by the holding in *Dickey*, which is compounded by the majority's current attempt to distinguish the instant case from *Dickey*. In finding that Dickey established self-defense *as a matter of law*, the majority stated that the State "certainly did not rebut [the] elements of self-defense beyond a reasonable doubt, as the law requires." *Dickey*, 394 S.C. at 502, 716 S.E.2d at 102. In my view, this statement and the related analysis constituted an inexplicable departure from the well-established "any evidence" standard for denying a

---

6. Justice Pleicones concurred in the result reached by the majority; however, he would have reversed the decision of the Court of Appeals on the basis there was no evidence to support the charge of voluntary manslaughter. *Dickey, 394 S.C. at 503–04, 716 S.E.2d at 103–04* (Pleicones, J., concurring).

defendant's motion for a directed verdict on self-defense. *See State v. Wiggins*, 330 S.C. 538, 544–48, 500 S.E.2d 489, 492–95 (1998) (concluding that the State presented sufficient evidence to create a jury issue as to whether the defendant was acting in self-defense or was guilty of voluntary manslaughter and stating, "[w]hen ruling on a motion for a directed verdict, the trial judge is concerned with the existence of evidence, not its weight" (citation omitted)); *see also State v. Weston*, 367 S.C. 279, 292, 625 S.E.2d 641, 648 (2006) ("A defendant is entitled to a directed verdict when the [S]tate fails to produce evidence of the offense charged."); *id.* at 292–93, 625 S.E.2d at 648 ("When reviewing a denial of a directed verdict, this Court views the evidence and all reasonable inferences in the light most favorable to the [S]tate. If there is *any direct evidence or any substantial circumstantial evidence* reasonably tending to prove the guilt of the accused, the Court must find the case was properly submitted to the jury." (emphasis added)).

As a result of *Dickey*, members of the Bench and Bar were left with the impression that the long-held "any evidence" standard for evaluating a directed verdict motion is not applicable to directed verdict motions when self-defense is claimed. Although this consequence may not have been intended by the majority in *Dickey*, it is a reality as seen by the issues presented by Petitioner in the instant case.

Here, rather than correct the erroneous standard enunciated in *Dickey*, the majority attempts to distinguish Petitioner's case from *Dickey*. In my opinion, this cannot be done as the State in both cases presented sufficient evidence to create a jury issue on self-defense.

Based on the foregoing, I would affirm Petitioner's convictions and take this opportunity to clarify that the "any evidence" standard is the correct standard to be employed by trial judges and our appellate courts in evaluating a defendant's motion for a directed verdict on self-defense.