# The Supreme Court of South Carolina

The State, Petitioner,

v.

Francis Larmand, Respondent.

Appellate Case No. 2013-001143

_____

ORDER

_____

The petition for rehearing is granted on allegations 1 and 4 in the petition, and denied as to all other allegations in the petition. This Court dispenses with any further briefing and substitutes the attached opinion for the opinion previously filed in this matter. Contrary to the position taken by respondent in the petition for rehearing, the remand ordered in the substituted opinion is to a panel of the South Carolina Court of Appeals and not to the Court of Appeals *en banc*.

As to petitioner's motion to revoke bond, this Court declines to rule on this motion. Instead, this motion should be considered by the Court of Appeals once this matter is returned to that Court.

|                           |       |
|---------------------------|-------|
| s/ Jean H. Toal           | C.J.  |
| s/ Costa M. Pleicones     | J.    |
| s/ Donald W. Beatty       | J.    |
| s/ John W. Kittredge      | J.    |
| s/ Kaye G. Hearn          | J.    |

Columbia, South Carolina
December 23, 2015

# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Petitioner,

v.

Francis Larmand, Respondent.

Appellate Case No. 2013-001143

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal From York County
William H. Seals, Jr., Circuit Court Judge

---

Opinion No. 27562
Heard February 3, 2015 – Refiled December 23, 2015

---

### REVERSED

---

Attorney General Alan McCrory Wilson, Chief Deputy
Attorney General John W. McIntosh, Senior Assistant
Deputy Attorney General Salley W Elliott and Senior
Assistant Deputy Attorney General Deborah R.J. Shupe,
all of Columbia, for Petitioner.

C. Rauch Wise, of Greenwood, for Respondent.

---

**CHIEF JUSTICE TOAL:**     The State appeals the court of appeals' decision in *State v. Larmand*, 402 S.C. 184, 739 S.E.2d 898 (Ct. App. 2013), reversing the trial court's denial of Frank Larmand's (Respondent) motion for a directed verdict on

charges for lynching, conspiracy, and pointing and presenting a firearm. We reverse.

## FACTS/PROCEDURAL BACKGROUND[1]

Respondent and his wife (collectively, the Larmands) are residents of Kannapolis, North Carolina. Together, they own a branch of Pop-A-Lock, a national locksmith franchise company providing customers with roadside assistance and locksmith services, and operate their branch in and around the Charlotte metropolitan area. Ryan Lochbaum worked at the Larmands' branch of Pop-A-Lock for several years until his termination in October 2008 for misconduct and providing unauthorized services to customers.

Approximately seven months after Lochbaum's termination, the Larmands became suspicious that he and one of their current employees, Mike Taylor, were conspiring to defraud Pop-A-Lock. Specifically, the Larmands believed that Taylor would occasionally relay a customer's location to Lochbaum, who would then place a removable magnetic sign on his vehicle and masquerade as the Pop-A-Lock locksmith. According to the Larmands, after the customer paid Lochbaum for "Pop-A-Lock's" services, Taylor and Lochbaum would split the money between themselves, and Taylor would inform the Larmands that the customer had left the designated location before he arrived.

To confirm their suspicions, the Larmands set up a "mystery shopper call" for Taylor. During the call, Respondent's brother-in-law, Leo Lemire, posed as a customer needing locksmith services at the Charlotte Knights' former stadium (Knights' Stadium) located in Fort Mill, South Carolina. Respondent and Lemire waited at the stadium in the hope of catching Taylor and Lochbaum.

Ultimately, neither Taylor nor Lochbaum responded to the telephone call. Therefore, around midnight, Respondent and Lemire drove to Lochbaum's house in Rock Hill, South Carolina, to investigate further, and potentially confront Lochbaum.[2] The two men parked at least one-quarter mile away from Lochbaum's house, despite the ample street parking available closer to the house. Further, they

---

[1] Because this appeal involves Respondent's motion for a directed verdict, we view the evidence in the light most favorable to the State. *State v. Walker*, 349 S.C. 49, 53, 562 S.E.2d 313, 315 (2002).

[2] At trial, a police officer and Lochbaum testified that it takes approximately one-and-a-half hours to drive from Respondent's home in Kannapolis to Lochbaum's home in Rock Hill.

parked their vehicle facing the neighborhood's sole entrance and exit.

Meanwhile, Lochbaum and three of his neighbors—Mark Whittington, Devin Fivecoat, and Ron Lee—were socializing outside Lochbaum's house. Respondent, dressed in all-black clothing, approached the group and stood and stared silently, looking "edgy" and "agitated." Eventually, Respondent stated he wanted to speak to Lochbaum, and Lochbaum asked his neighbors to give them some privacy.

Respondent and Lochbaum began arguing loudly and pushing one another. Approximately one minute into the exchange, Respondent broke eye contact with Lochbaum and looked toward the vacant, darkened field abutting Lochbaum's house. Lochbaum then saw Lemire (also wearing all-black clothing) approaching quickly and pointing a handgun at Lochbaum. Lemire said, "This is what you get when you fuck with my family," and pulled the hammer of the gun back.

Lochbaum seized the gun and began to struggle with Lemire. Respondent placed Lochbaum in a chokehold and attempted to pull him away from Lemire. Whittington, Fivecoat, and Lee, who had been watching the exchange from several houses away, ran down the street and jumped into the fray in an effort to separate Lemire, Respondent, and Lochbaum. Lochbaum's next-door neighbor, Jesse Harris, also heard the commotion and ran out to stop the fight.[3] Throughout the scuffle, Lemire screamed at everyone, "F-you, he's f'ing with my family, he's f'ing with my family."

Lochbaum, Whittington, Fivecoat, Lee, and Harris were able to wrestle the gun away from Lemire and pull Respondent away from Lochbaum. Respondent and Lemire quickly left the scene, driving at approximately sixty miles per hour in a thirty-five mile per hour zone without illuminating the vehicle's headlights.

Ultimately, a grand jury indicted Respondent and Lemire for lynching, conspiracy, and pointing and presenting a firearm. At trial, Respondent moved for a directed verdict at the conclusion of the State's case. He argued that the State had failed to provide any testimony that the attack on Lochbaum was premeditated, or that Respondent and Lemire jointly planned the attack. Rather, Respondent asserted he was merely speaking with Lochbaum when Lemire appeared, and he only reacted to Lochbaum's "affirmative action" of "jump[ing] on [] Lemire" to

_____

[3] During the struggle, Harris placed his finger between the gun's hammer and the gun to prevent it from being fired. At some point, the hammer of the gun "clicked" on Harris's finger, indicating that the gun would have discharged during the fight had Harris's finger not stopped the hammer.

grab the gun. The trial court denied Respondent's motion, and the jury later convicted Respondent and Lemire of second-degree lynching, criminal conspiracy, and pointing and presenting a firearm.

The court of appeals reversed the trial court's decision to deny Respondent's motion for a directed verdict. *Larmand*, 402 S.C. at 187, 739 S.E.2d at 900. Specifically, with respect to the lynching and conspiracy charges, the court of appeals found a complete lack of evidence of premeditation or a common plan to assault Lochbaum. *Id.* at 190–94, 739 S.E.2d at 901–03. With respect to the firearm charge, the court of appeals found that the State did not present any evidence of a conspiracy between Respondent and Lemire, and it was undisputed that Respondent never had possession of the gun. *Id.* at 194, 739 S.E.2d at 903–04. Therefore, the court of appeals reversed all three of Respondent's convictions. *Id.* at 194, 739 S.E.2d at 904.[4]

We granted the State's petition for a writ of certiorari to review the court of appeals' decision.

## ISSUE

Whether the court of appeals applied the correct standard of review in considering the trial court's denial of Respondent's directed verdict motion?

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). A court is "bound by the trial court's factual findings unless they are clearly erroneous." *Id.*

## ANALYSIS

"A defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged." *State v. Walker*, 349 S.C. 49, 53, 562 S.E.2d 313, 315 (2002). In reviewing a defendant's motion for a directed verdict, the trial judge is only concerned with the existence of evidence, not with its weight. *State v. Butler*, 407 S.C. 376, 381, 755 S.E.2d 457, 460 (2014) (citation omitted).

On appeal from the denial of a directed verdict, appellate courts must view the evidence and reasonable inferences in the light most favorable to the State. *Id.*

---

[4] Because the court of appeals found these issues dispositive, it did not reach the remainder of Respondent's arguments on appeal.

If there is either any direct evidence or any substantial circumstantial evidence reasonably tending to prove the defendant's guilt, appellate courts must find that the trial judge properly submitted the case to the jury. *State v. Cherry*, 361 S.C. 588, 593–94, 606 S.E.2d 475, 478 (2004); *see also Walker*, 349 S.C. at 53, 562 S.E.2d at 315 ("When a motion for a directed verdict is made in a criminal case where the State relies exclusively on circumstantial evidence, the trial judge is required to submit the case to the jury if there is any substantial evidence which reasonably tends to prove the guilt of the accused, or from which his guilt may be fairly and logically deduced." (citation omitted)).

In pursuing a lynching conviction, the State must produce at least some evidence that two or more persons had a common, premeditated intent to commit a joint act of violence on the person of another. *See* S.C. Code Ann. § 16-3-220 (2003) (defining second-degree lynching as "[a]ny act of violence inflicted by a mob upon the body of another person and from which death does not result") (recodified as amended at S.C. Code Ann. § 16-3-210(C) (Supp. 2014)); S.C. Code Ann. § 16-3-230 (2003) (defining a mob as "the assemblage of two or more persons, without color or authority of law, for the premeditated purpose and with the premeditated intent of committing an act of violence upon the person of another") (recodified at S.C. Code Ann. § 16-3-210(A) (Supp. 2014)); *State v. Smith*, 352 S.C. 133, 137, 572 S.E.2d 473, 475 (Ct. App. 2002). The premeditated intent to do violence may be formed either before or during the assemblage, but by definition cannot be spontaneous. *Smith*, 352 S.C. at 137, 572 S.E.2d at 475.

Moreover, "[t]o establish the existence of a conspiracy, proof of an express agreement is not necessary, and direct evidence is not essential, but the conspiracy may be sufficiently shown by circumstantial evidence and the conduct of the parties." *State v. Kelsey*, 331 S.C. 50, 63, 502 S.E.2d 63, 70 (1998).[5] Because the crime of conspiracy is the agreement itself, the State need not show any overt acts in furtherance of the common scheme or plan. *State v. Wilson*, 315 S.C. 289, 292, 294, 433 S.E.2d 864, 867, 868 (1993). Nonetheless, substantive crimes committed in furtherance of the conspiracy may constitute circumstantial evidence from which a jury could infer the existence of the conspiracy, its object, and scope. *Id.*

At issue here is whether the State presented any evidence demonstrating a

---

[5] *See also* S.C. Code Ann. § 16-17-410 (2003 & Supp. 2014) (defining a criminal conspiracy as "a combination between two or more persons for the purpose of accomplishing an unlawful object or lawful object by unlawful means"); *State v. Gunn*, 313 S.C. 124, 134, 437 S.E.2d 75, 80 (1993) (stating that the "gravamen of the offense of conspiracy is the agreement or combination," not merely a common objective between similarly situated people (citations omitted)).

premeditated intent on the part of Respondent to assault Lochbaum (for the lynching charge), or that Respondent and Lemire entered into an agreement to perpetrate the assault (for the conspiracy charge).[6] The State contends that the court of appeals applied an improper standard of review in conducting its inquiry. Specifically, the State argues that the court of appeals expressly credited the defense evidence and made credibility determinations, thereby erroneously substituting its own judgment for that of the trial court and the jury. We agree.

While the court of appeals should have considered the evidence in the light most favorable to the State, it instead primarily cited to *Respondent's and Lemire's* testimony, including their explanations for their actions. *See, e.g.*, *Larmand*, 402 S.C. at 191–92, 739 S.E.2d at 902; *id.* at 194, 739 S.E.2d at 903. In doing so, the court of appeals incorrectly minimized the circumstantial evidence the State presented regarding premeditation and an agreement between Respondent and Lemire.

Specifically, the State demonstrated: (1) Respondent and Lemire lived approximately one-and-a-half hours away from Lochbaum's house; (2) Respondent and Lemire arrived at Lochbaum's neighborhood late at night, unannounced; (3) Respondent and Lemire wore all-black clothing; (4) Respondent and Lemire parked their vehicle over one-quarter mile away from Lochbaum's house, facing the sole entrance and exit to the neighborhood, despite ample street parking near Lochbaum's house; (5) Respondent and Lemire approached Lochbaum's house on foot, rather than conducting a "drive by" to look for incriminating evidence of Lochbaum's involvement in the scheme to defraud Pop-A-Lock, such as the magnetic sign on Lochbaum's vehicle; (6) Respondent was "edgy" and "agitated" when he approached Lochbaum's house, and stood and stared silently at Lochbaum and his neighbors; (7) Respondent broke off arguing with and pushing Lochbaum to observe Lemire's approach from the adjoining vacant, darkened lot; (8) Lemire approached Respondent and Lochbaum a mere one minute after Whittington, Fivecoat, and Lee departed, despite parking at least one-quarter mile away; (9) Lemire approached from a vacant, darkened lot rather than from the lit street or sidewalk; (10) upon his approach, Lemire immediately pointed the gun at Lochbaum and drew the hammer of the gun back; (11) Lemire told Lochbaum, "This is what you get when you fuck with my family," and later during the altercation refused to let go of his gun because Lochbaum was "f'ing with [his] family;" (12) Respondent never confronted Lemire or tried to get him to lower the weapon or return to their vehicle; and (13) Respondent and Lemire drove away

---

[6] We need not address the firearm charge separately, as its validity rises and falls on the existence of a conspiracy under the "hand of one is the hand of all" theory.

together at a high rate of speed without illuminating their vehicle's headlights.

Although Respondent presented plausible explanations for each of these facts, our duty is not to weigh the plausibility of the parties' competing explanations. Rather, we must assess whether, in the light most favorable to the State, there was substantial circumstantial evidence from which the jury could infer Respondent's guilt. *Cf. Jackson v. Virginia*, 443 U.S. 307, 317 n.9 (1979) (citing *Holland v. United States*, 348 U.S. 121, 140 (1954) (rejecting the contention that circumstantial evidence must exclude every hypothesis but that of guilt)). Given the deferential standard of review, we find the State presented sufficient circumstantial evidence of premeditation and a common plan or scheme such that the trial judge properly denied Respondent's motion for a directed verdict. Accordingly, the court of appeals erred in reversing Respondent's convictions.

## CONCLUSION

For the foregoing reasons, the decision of the court of appeals is reversed. However, because the court of appeals did not address the remainder of Respondent's arguments on appeal, we remand the matter to the court of appeals for further action not inconsistent with this opinion.

**REVERSED.**

**PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.**