# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Petitioner,

v.

Michael Wilson Pearson, Respondent.

Appellate Case No. 2014-002741

_____

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

_____

Appeal From Clarendon County
R. Ferrell Cothran, Jr., Circuit Court Judge

_____

Opinion No. 27612
Heard November 4, 2015 – Filed March 23, 2016

_____

## REVERSED

_____

Attorney General Alan McCrory Wilson and Assistant
Attorney General Jennifer Ellis Roberts, both of
Columbia, for Petitioner.

Appellate Defender Kathrine Haggard Hudgins, of
Columbia, for Respondent.

_____

**JUSTICE BEATTY:** Michael Wilson Pearson was convicted of first-degree burglary, armed robbery, kidnapping, grand larceny, and possession of a

weapon during the commission of a violent crime.  The trial judge sentenced Pearson to an aggregate sentence of sixty years' imprisonment.  The Court of Appeals reversed, holding the circumstantial evidence presented by the State was insufficient to submit the case to the jury.  *State v. Pearson*, 410 S.C. 392, 764 S.E.2d 706 (Ct. App. 2014).  This Court granted the State's petition for a writ of certiorari to review the decision of the Court of Appeals.  For reasons that will be discussed, we reverse the decision of the Court of Appeals and affirm Pearson's convictions and sentences.

## I.      Factual / Procedural History

Around 6:15 a.m. on May 15, 2010, Edward "Slick" Gibbons ("Victim") was attacked by three black males wearing masks as he exited his garage.  According to Victim, he was putting on his shoes to get ready to go to work when the men ran out of a storage room in his carport and threw him on the ground.  The three men robbed Victim of approximately $840, beat him, and wrapped duct tape around his head.  One of the men called Victim by his nickname, "Slick," and said, "Slick, you know that we know that you got money," and the man asked him where the rest of the money was located.  Victim told them he had already given them everything he had and begged them not to beat him anymore.  Victim noticed one of the men appeared to have something in his hand that might have been a pistol, and he heard the men discuss whether to shoot him.

The three men then left in Victim's 1987 Chevrolet El Camino.  As the men were driving away, Victim pulled himself up and observed one man, who was riding in the open back of the El Camino, yell to the two men seated inside the vehicle, "he's up, he's up."  This man got out of the vehicle, ran back to Victim and hit him again, rendering him unconscious.  When Victim regained consciousness, he alerted his wife by ringing the doorbell on the home.  Victim's wife contacted her daughter who called 911 to report the attack.

At approximately 6:40 a.m., a local farmer, Cecil Eaddy, Jr., found the El Camino abandoned in the road with the keys still in it, the motor running, and the passenger door open.  The car was located about a mile and half from the auto parts store that Victim owned and within a few miles of Victim's home.  Eaddy pulled the vehicle out of the road, turned off the engine, took the keys to Victim's store, and drove Walter Bush, one of Victim's employees, back to the vehicle so that Bush could drive it to Victim's store.  Bush testified he drove the vehicle "[s]traight back to the store."

Ricky Richards, an investigator with the Clarendon County Sheriff's Department, responded to the 911 call. After a few minutes at Victim's home, Richards was called to process the El Camino. Richards testified he lifted fingerprints from the driver's side "door jamb" and the "rear quarter on the driver's side." Richards acknowledged there was no way to tell when the fingerprints were left on the vehicle.

While Victim was being treated at the hospital, Thomas Ham, an investigator with the Clarendon County Sheriff's Department, assisted Investigator Kenneth Clark in his interview with Victim. Investigator Ham also took the duct tape that was removed from Victim's head and submitted it to SLED for processing.

Ultimately, a fingerprint recovered from the vehicle was identified as a thumbprint belonging to Pearson and DNA evidence on the duct tape was matched to Victor Weldon. Marie Hodge, the Automated Fingerprint Identification System ("AFIS") examiner, testified that she was able to determine that the fingerprint matched Pearson's right thumbprint. However, Hodge admitted she could not "age" the fingerprint as it could have been "there from two years on up to two days."

Following his arrest, Pearson was interviewed by Investigators Clark and Ham. Investigator Clark testified that Pearson denied he knew Victim or where he lived. According to Investigators Clark and Ham, Pearson stated that he had never been to Victim's house or come in contact with Victim's vehicle. Investigator Clark also interviewed Victor Weldon, who denied having any involvement in the crimes. In separate interviews, Pearson and Weldon denied that they knew each other.

To counter these statements, the State presented evidence that Pearson had been on Victim's property. Richard Gamble, a local landscaper, testified Pearson had previously assisted him in doing landscaping work for Victim and Victim's son, who lived on the same block. Although Gamble could not recall the exact date of the landscaping project, he believed it took place in the spring of 2009 or 2010 and lasted "at least 5 days." Gamble further testified that while working on the project, he observed Pearson enter Victim's garage in order to retrieve tools that were located in the storage area.

Additionally, the State presented the testimony of John Hornsby, who worked as an area supervisor at the South Carolina Vocational Rehabilitation

Center in Sumter. According to Hornsby, time cards and attendance records revealed Pearson and Weldon were both assigned to the facility's woodshop from December 9 through December 12, 2008. Hornsby indicated that around twenty-five individuals generally worked at the woodshop on a daily basis.

After the State rested, Pearson and Weldon both moved for a directed verdict on all charges. Pearson's counsel argued that even though Pearson's fingerprint was found on the outside of Victim's car, the fingerprint was insufficient to place Pearson at the crime scene. Counsel explained there was no evidence as to when the fingerprint was placed on the El Camino and further noted that Pearson lived a block and half from Victim's auto parts store where the vehicle was parked. Counsel opined that "[i]t could have been [placed] well before this whole thing happened."

In response, the State argued that Pearson's fingerprint was found on the rear of the vehicle, where Victim testified one of the men who robbed him had been seated as they drove away. The State also referenced evidence that Pearson and Weldon attended the same job training program over a four-day period, as well as testimony that Pearson had done landscaping work at Victim's home.

Pearson's counsel replied that there were no fingerprints found on the back of the El Camino where Victim "identified the man getting out of the truck, on or off the truck." Counsel reiterated that "the fingerprint was the only hard evidence the State ha[d] against [Pearson] found on that truck."

The trial judge denied both directed verdict motions. In so ruling, the judge stated:

> As far as Mr. Pearson's fingerprint the evidence in this case that has come before this jury that I recall he told the police officer he did not know [Victim]. He had not been at his house or his place of business.

> His vehicle was taken that morning. Within 30 minutes the vehicle was found abandoned a mile and a half or two miles away. The vehicle was processed and was carried to the auto parts place and processed. That day his fingerprint was found on the vehicle.

And I certainly think at least that's sufficient evidence for the jury to make a determination of guilt or innocence in this case. And I respectfully deny your motion.

The judge explained he was aware there was also evidence that Pearson had done landscaping work in Victim's yard, was familiar with Victim's house, and there was a question regarding the timeframe of this work. However, the judge found this presented a question of fact for a jury to evaluate because Pearson maintained that he had no contact with Victim or his property.

Neither Pearson nor Weldon presented any evidence. The jury convicted both of first-degree burglary, armed robbery, kidnapping, grand larceny, and possession of a weapon during the commission of a violent crime.

Pearson appealed to the Court of Appeals. The Court of Appeals reversed, finding the circumstantial evidence presented by the State did not rise to the level of substantial circumstantial evidence necessary to submit the case to the jury. *State v. Pearson*, 410 S.C. 392, 764 S.E.2d 706 (Ct. App. 2014).

In so ruling, the court found that although the recovered fingerprint directly tied Pearson to the stolen vehicle, "the fingerprint merely raised a suspicion of Pearson's guilt because there was no additional evidence showing when the fingerprint was placed on the vehicle." *Id.* at 402, 764 S.E.2d at 712. The court explained that "there was other evidence showing Pearson may have had an opportunity to come in contact with the vehicle before the crimes occurred." *Id.* at 401, 764 S.E.2d at 711. The court noted there was "testimony that [Victim] regularly parked his vehicle in a public lot adjacent to his store" and Pearson "assisted with a five-day landscaping project at [Victim's] residence." *Id.*

The court also noted that "the additional incriminating evidence presented by the State failed to fill the gaps in proof and left the jury to speculate as to Pearson's guilt." *Id.* at 402, 764 S.E.2d at 711. Specifically, the court found no evidence established a relationship between Pearson and Weldon and, at most, the "evidence demonstrate[d] the two co-defendants worked in the same facility at the same time." *Id.* at 402, 764 S.E.2d at 712. Although Pearson and Weldon denied knowing each other, the court found "it is not incredible that neither man could remember a fellow participant in a program they attended more than a year before the crimes." *Id.* The court concluded that "[d]espite the fact Weldon was tied to the crimes because of his DNA on the duct tape, nothing tied Pearson to the crime scene." *Id.*

Following the denial of the State's petition for rehearing, this Court granted certiorari to review the decision of the Court of Appeals.

## II.    Standard of Review

"[W]hen the State fails to produce substantial circumstantial evidence that the defendant committed a particular crime, the defendant is entitled to a directed verdict." *State v. Odems*, 395 S.C. 582, 586, 720 S.E.2d 48, 50 (2011); *see Hepburn*, 406 S.C. at 429, 753 S.E.2d at 408 ("In cases where the State has failed to present evidence of the offense charged, a criminal defendant is entitled to a directed verdict."). Further, when the State relies exclusively on circumstantial evidence and a motion for a directed verdict is made, the trial judge is concerned with the existence or non-existence of evidence, not with its weight. *Cherry*, 361 S.C. at 594, 606 S.E.2d at 478. The trial judge "should not refuse to grant the directed verdict motion when the evidence merely raises a suspicion that the accused is guilty." *Id.* "'Suspicion' implies a belief or opinion as to guilt based upon facts or circumstances which do not amount to proof." *Id.* "However, a trial judge is not required to find that the evidence infers guilt to the exclusion of *any other reasonable hypothesis*." *State v. Ballenger*, 322 S.C. 196, 199, 470 S.E.2d 851, 853 (1996) (emphasis added).

"On appeal from the denial of a directed verdict, this Court views the evidence and all reasonable inferences in the light most favorable to the State." *State v. Butler*, 407 S.C. 376, 381, 755 S.E.2d 457, 460 (2014).

## III.    Discussion

### A.    Arguments

The State argues the Court of Appeals erroneously reversed Pearson's convictions based upon a misapplication of the standard of review regarding the denial of a motion for a directed verdict. Although the State acknowledges that the Court of Appeals correctly identified the standard of review regarding "substantial circumstantial evidence," the State maintains the Court of Appeals improperly focused on "the State's burden of proving beyond a reasonable doubt the identity of the defendant as the person who committed the charged crime[.]" According to the State, the Court of Appeals confused the burden of proof required to sustain a conviction with the level of evidence required to sustain a challenge at the directed verdict stage.

Citing *State v. Hepburn*, 406 S.C. 416, 753 S.E.2d 402 (2013) and *State v. Cherry*, 361 S.C. 588, 606 S.E.2d 475 (2004),[1] the State contends the trial judge was not required to find the inferences from the evidence demonstrated Pearson's guilt to the exclusion of *every* other reasonable hypothesis. Instead, the State claims the relevant question was, after viewing the evidence in the light most favorable to the State, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, as a trial judge must not weigh the facts. In support of this claim, the State notes that these principles are consistent with decisions of the United States Supreme Court ("USSC") such as *Jackson v. Virginia*, 443 U.S. 307 (1979).[2]

Further, the State asserts that in reversing the trial judge's decision, the Court of Appeals engaged in speculation and weighed the evidence of the fingerprint "rather than simply considering its existence[] to determine whether it reached the level of substantial circumstantial evidence." In essence, the State avers the Court of Appeals reached its decision based on the "mere possibility" that Pearson may

---

[1] The State references the following language in *Hepburn*:

> The trial court should grant the directed verdict motion when the evidence merely raises a suspicion that the accused is guilty as suspicion implies a belief or opinion as to guilt based upon facts or circumstances which do not amount to proof. On the other hand, a trial judge is not required to find that the evidence infers guilt to the exclusion of *any other reasonable hypothesis*.

*Hepburn*, 406 S.C. at 429, 753 S.E.2d at 409 (quoting *Cherry*, 361 S.C. at 594, 606 S.E.2d at 478 (citations & internal quotations marks omitted)) (emphasis added).

[2] In *Jackson*, the USSC stated:

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts.

*Jackson*, 443 U.S. at 319 (citation omitted).

have had an opportunity to come in contact with Victim's vehicle before the crimes occurred. Even assuming that this alternate hypothesis was reasonable, the State asserts that the evidence did not need to exclude the hypothesis in order to submit the case to the jury.

## B.     Case Trend

Recently, this Court has been presented with a series of criminal cases where the Court of Appeals has reversed the trial judge's denial of a defendant's motion for a directed verdict on the ground the circumstantial evidence was insufficient to submit the case to the jury. Two of these cases, *State v. Lane*, 406 S.C. 118, 749 S.E.2d 165 (Ct. App. 2013),[3] and *State v. Bennett*, 408 S.C. 302, 758 S.E.2d 743

---

[3] In *Lane*, the defendant was indicted for first-degree burglary in connection with the theft of several firearms at the victim's home. *Lane*, 406 S.C. at 119, 749 S.E.2d at 166. At trial, the State presented evidence that the victim's neighbor observed a red car with gray primer paint on the front passenger panel and a paper license plate parked in the victim's driveway on the afternoon of the burglary. *Id.* at 120, 749 S.E.2d at 166. The neighbor observed two people in the vehicle, one of whom walked back and forth from the vehicle to the victim's front door. *Id.* Later that evening, following the burglary, the victim found a piece of paper with a unique username and password printed upon it lying next to his driveway. *Id.* at 120, 749 S.E.2d at 167. Law enforcement went to interview Lane after determining that the piece of paper had been issued to Lane from the local unemployment office. *Id.* The officers found Lane at his girlfriend's parents' home where they observed the red car with the gray primer paint and a paper license plate in the driveway. *Id.* Although Lane was initially evasive, he acknowledged that he was driving the red car the day of the burglary and confirmed that he had been issued the paper from the unemployment agency. *Id.* The Court of Appeals reversed the trial court's refusal to direct a verdict of acquittal for Lane, finding the State did not present substantial circumstantial evidence to prove Lane committed first-degree burglary. *Id.* at 122, 749 S.E.2d at 168. This Court granted the State's petition for a writ of certiorari and reversed, finding the evidence was sufficient to withstand Lane's motion for a directed verdict. *State v. Lane*, 410 S.C. 505, 765 S.E.2d 557 (2014).

(Ct. App. 2014),[4] were cited to support the decision of the Court of Appeals in the instant case. *Pearson*, 410 S.C. at 398-400, 764 S.E.2d at 710-11.

This Court has since reversed *Lane* and *Bennett*. Further, in *Bennett*, the Court took the opportunity to resolve the apparent confusion over the appropriate standard governing whether the State has presented sufficient evidence to overcome a motion for a directed verdict. *State v. Bennett*, 415 S.C. 232, 781 S.E.2d 352 (2016). Initially, the Court differentiated between the analysis of a court considering circumstantial evidence when ruling on a directed verdict motion and that performed by the jury. *Id.* at ___, 781 S.E.2d at 354. The Court explained that "[w]ithin the jury's inquiry, 'it is necessary that every circumstance relied upon by the state be proven beyond a reasonable doubt; and that all of the circumstances so proven be consistent with each other and, taken together, point conclusively to the guilt of the accused to the exclusion of every other reasonable hypothesis.'" *Id.* (quoting *State v. Littlejohn*, 228 S.C. 324, 328, 89 S.E.2d 924, 926 (1955)). In contrast, the trial court, when ruling on a directed verdict motion, "views the evidence in the light most favorable to the State and must submit the case to the jury if there is 'any substantial evidence which reasonably tends to prove the guilt of the accused, or from which his guilt may be fairly and logically deduced.'" *Id.*

---

[4] In *Bennett*, the defendant was convicted of second-degree burglary, malicious injury to property, and petit larceny in connection with theft and destruction at a community center. *State v. Bennett*, 408 S.C. 302, 758 S.E.2d 743 (Ct. App. 2014). The State presented evidence that a window was broken at the community center and that the door next to it was ajar. *Id.* at 303, 758 S.E.2d at 744. Inside the community center, there was evidence that a television, which was mounted on the wall of the community room, had been tampered with, as if someone had been attempting to remove it. *Id.* at 304, 758 S.E.2d at 744. A fingerprint lifted from the television matched Bennett's fingerprints. *Id.* Officers also discovered that a computer and television were missing from the computer room. *Id.* When officers returned later in the day, they found two drops of blood located beneath the stand where the television had been. *Id.* at 305, 758 S.E.2d at 745. The DNA profile from the blood droplets matched that of Bennett, who had also been identified as a frequent visitor at the community center. *Id.* On appeal, the Court of Appeals reversed, finding the evidence only created a suspicion of guilt and, therefore, a directed verdict should have been granted in Bennett's favor. *Id.* at 307, 758 S.E.2d at 746. This Court granted the State's petition for a writ of certiorari and reversed, finding the evidence was sufficient to withstand Bennett's motion for a directed verdict. *State v. Bennett*, 415 S.C. 232, 781 S.E.2d 352 (2016).

(quoting *Littlejohn*, 228 S.C. at 329, 89 S.E.2d at 926). Based on this distinction, the Court explained:

> [A]lthough the *jury* must consider alternative hypotheses, the *court* must concern itself solely with the existence or non-existence of evidence from which a jury could reasonably infer guilt. This objective test is founded upon reasonableness. Accordingly, in ruling on a directed verdict motion where the State relies on circumstantial evidence, the court must determine whether the evidence presented is sufficient to allow a reasonable juror to find the defendant guilty beyond a reasonable doubt.

*Id.*; *see State v. Larmand*, 415 S.C. 23, 32, 780 S.E.2d 892, 896 (2015) ("Although Respondent presented plausible explanations for each of these facts, our duty is not to weigh the plausibility of the parties' competing explanations. Rather, we must assess whether, in the light most favorable to the State, there was substantial circumstantial evidence from which the jury could infer Respondent's guilt.").

## C.    Application

Here, the State presented evidence that: (1) Pearson's fingerprint was found on the stolen vehicle, which was located approximately two miles from Victim's home within thirty minutes of the crime; (2) Pearson denied that he had contact with Victim's vehicle, knew Victim, or knew where he lived; (3) Victim testified that before the suspects drove away one of the men, who was riding in the open back of the vehicle, got out of the vehicle and returned to attack him; (4) Pearson and Weldon were in the same vocational rehabilitation training program during a four-day period; and (5) DNA evidence on the duct tape removed from Victim's head was matched to Weldon.

Viewing this evidence in the light most favorable to the State, we conclude the evidence could induce a reasonable juror to find Pearson guilty. As in *Bennett*, we find the Court of Appeals weighed the evidence and erroneously required the State, at the directed verdict stage, to present evidence sufficient to exclude *every* other hypothesis of Pearson's guilt. *See Pearson*, 410 S.C. at 401-02, 764 S.E.2d at 711 ("Because the State offered no timing evidence to contradict *reasonable*

*explanations* for the presence of the fingerprint, the jury could only have guessed the fingerprint was made at the time of the crimes." (emphasis added)).[5]

## IV.    Conclusion

Accordingly, we reverse the decision of the Court of Appeals and affirm Pearson's convictions and sentences.

**REVERSED.**


**KITTREDGE, HEARN, JJ., and Acting Justice Jean H. Toal, concur. PLEICONES, C.J., concurring in result only.**

---

[5] Pearson cites *State v. Bostick*, 392 S.C. 134, 708 S.E.2d 774 (2011), *State v. Arnold*, 361 S.C. 386, 605 S.E.2d 529 (2004), and *State v. Mitchell*, 341 S.C. 406, 535 S.E.2d 126 (2000) as examples of cases where this Court found that circumstantial evidence, particularly fingerprint evidence, was insufficient for submission to the jury when the State failed to place the defendant at the scene of the crime. While we have certainly considered these cases, we need not engage in the futile exercise of attempting to distinguish their holdings from the instant case as we have recognized that "in this area of ever-evolving jurisprudence our inquiry is necessarily fact-intensive" and holdings in these cases are "limited to their peculiar facts." *Bennett*, 415 S.C. at ___ n.1, 781 S.E.2d at 354 n.1.