758 S.E.2d 743

The STATE, Respondent,

v.

Kevin Tyrone BENNETT, Appellant.

Appellate Case No. 2012–207559.

No. 5234.

Court of Appeals of South Carolina.

Heard Dec. 12, 2013.
Decided May 28, 2014.
Rehearing Denied June 19, 2014.

Appellate Defender David Alexander, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Deputy Attorney General David A. Spencer, both of Columbia, for Respondent.

HUFF, J.

Kevin Tyrone Bennett was convicted of burglary in the second degree, petty larceny, and malicious injury to real property. Bennett appeals, arguing the trial court erred in denying his motion for directed verdict based upon the insufficiency of the evidence. We reverse.

## FACTUAL/PROCEDURAL BACKGROUND

Around 3:30 a.m. on November 17, 2010, an alarm activated at the C.C. Woodson Community Center (the Center) in the City of Spartanburg. Upon their arrival, police discovered a broken door adjacent to a smashed window in the area referred to as the "community room." Officer Osrechek dusted the doors, as well as the televisions, for fingerprints in this room. He was able to lift one usable print from a wall-mounted television located in the community room. Officer Osrechek focused on this particular television in the room because it appeared to him that someone had tampered with

it. He testified he found the television in an unnatural position, pointing down at a sharper angle than it should have been in order to project across the large room. Though he did not recall seeing any damage to the television, it appeared to him to have been manipulated, as if someone were trying to remove it from the wall. Officer Osrechek also went to the computer room, where he took photographs. In particular, he photographed holes in a wall and mounting brackets on the floor where a television once sat, and noted it was obvious an item had been removed from the wall. He did not locate any fingerprints or other forensic evidence in the computer room. A fingerprint examination expert later testified that, after comparing the latent print lifted from the community room by Officer Osrechek with Bennett's prints, the latent print belonged to Bennett.

Officer McClure also responded to the scene, where he processed the computer room. He testified it appeared that one of the computers was missing. He observed two misplaced chairs, which had apparently been moved from underneath the computer desk and were found directly below brackets on the wall where a television was missing. The chairs were pushed against a wall "as if somebody would use them as leverage." Also discovered next to one of the chairs was a tire iron. Officer McClure was unable to lift any fingerprints from the computer room, and did not discover any blood or other forensic evidence in there. He collected the tire iron to be processed by their forensic team, but no prints were ultimately recovered from this item either.

Olivia Sartor, the director of the Center, testified she arrived at the Center between 3:30 and 4:00 a.m. on November 17, 2010, and was asked by officers to walk through the building to see if anything was missing. She observed glass broken in the community room. Nothing was missing from that room, but Sartor did observe abrasions on the wall, as if something had been used to try to pry the televisions from the wall. In the computer room, she found a television, computer, monitor and keyboard were missing. Sartor explained the community room was not simply open for the public to enter, but that it was scheduled for events. However, the doors were not always locked to that room and Sartor agreed the scheduling of events did not control who was able to access the

community room. Sartor stated she had seen Bennett in the Center several times prior to the break-in, characterizing him as a frequent visitor who mainly participated in their computer lab in the computer room. During the hours of the day she saw Bennett at the Center, there were usually after school programs meeting in the community room, as well as adult groups such as senior citizen craft classes or bridge groups, both of which met earlier in the day. Sartor did not remember Bennett being in the community room and did not recall seeing him in that room as part of these groups. Sartor also stated she would monitor Bennett when he was in the facility. She testified the Center was open from 6:00 a.m. to 9:00 p.m., and she was typically present at the facility from 6:00 a.m. until 7:00 or 8:00 p.m. She acknowledged, though, that she was unable to monitor Bennett during the times she was not at the Center. She further agreed that grief support groups and addiction support groups also used the community room in the evening.

Officer Banks, who was assigned to Spartanburg Public Safety Department's burglary task force, testified he arrived at the Center at approximately 9:30 in the morning on November 17, 2010. He checked to see if there was any other evidence, such as blood or fingerprints, the other officers may have missed. He noted that brackets to one of the televisions in the community room appeared to have been dislocated from the wall on one side, leaving the television hanging lower than normal. In the computer room, Officer Banks discovered two small droplets of blood approximately two inches below what would have been the bottom of the missing television. The blood droplets were also about one and a half to two feet above the chair. The officer collected swabs of the blood found in the computer room. A later DNA analysis of the blood swabs showed it matched the DNA profile of Bennett.

After the State rested, Bennett moved for a directed verdict on all charges arguing, though there was evidence of the presence of his fingerprint and blood in the Center, it was a public building and the evidence showed he often visited the building. The State countered, viewing the evidence in a light most favorable to the State, based on the presence of the fingerprint near the television with the damaged brackets as well as the blood spot near the missing television, the jury

could infer Bennett was the burglar. The trial court recognized this was a circumstantial evidence case, but denied Bennett's motion finding there was substantial circumstantial evidence from which the jury could conclude Bennett was the perpetrator of the crime.

## STANDARD OF REVIEW

In an appeal from the denial of a motion for directed verdict, this court must view the evidence in the light most favorable to the State, and if there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, we must find that the case was properly submitted to the jury. *State v. Cope*, 405 S.C. 317, 348, 748 S.E.2d 194, 210 (2013). When a case is built wholly on circumstantial evidence, if the State fails to produce substantial circumstantial evidence the defendant committed a particular crime, he is entitled to a directed verdict. *State v. Odems*, 395 S.C. 582, 586, 720 S.E.2d 48, 50 (2011). "The State has the burden of proving beyond a reasonable doubt the identity of the defendant as the person who committed the charged crime or crimes." *State v. Lane*, 406 S.C. 118, 121, 749 S.E.2d 165, 167 (Ct.App.2013). "Unless there is a total failure of competent evidence as to the charges alleged, refusal by the trial judge to direct a verdict of acquittal is not error." *State v. Arnold*, 361 S.C. 386, 389, 605 S.E.2d 529, 531 (2004). However, the trial court should grant a directed verdict when the evidence merely raises a suspicion that the accused is guilty. *Id.* at 390, 605 S.E.2d at 531. *See also State v. Hernandez*, 382 S.C. 620, 625, 677 S.E.2d 603, 605 (2009) (holding mere suspicion is insufficient to support a verdict). " 'Suspicion' implies a belief or opinion as to guilt based upon facts or circumstances which do not amount to proof." *State v. Cherry*, 361 S.C. 588, 594, 606 S.E.2d 475, 478 (2004). The trial court is not, however, required to find that the evidence infers guilt to the exclusion of any other reasonable hypothesis. *Id.*

## LAW/ANALYSIS

On appeal, Bennett contends the trial court erred in denying his motion for directed verdict, because the evidence

against him was solely circumstantial, and the circumstantial evidence was not substantial. We agree.

■ The State's case consisted solely of circumstantial evidence. It relied primarily upon the following: (1) that Bennett's fingerprint was found on a community room television set that may have been manipulated by the burglar in an attempt to remove the television, and (2) that two small droplets of blood matching Bennett's DNA were found below the space where a stolen television once sat in the computer room. However, it is uncontroverted that Bennett was a frequent visitor to the Center prior to the crime, spending much of his time in the computer room. Additionally, while the director of the Center testified she was in the habit of monitoring Bennett when he was at the Center, she acknowledged that she typically left the Center at least one hour before it closed at night and she was not able to monitor Bennett when she was not at the Center. Further, though she directed Bennett to the computer room and did not see him participating in the group activities such as the after-school programs and Senior Citizen programs held in the community room earlier in the day, she agreed there were other groups which met in the room at night and she was not typically at the Center the last hour it was open. The director also acknowledged the community room door was not always locked, and the scheduling of activities in the community room would not control who had access to the room. Thus, we cannot say it would be unexpected to find Bennett's DNA in the computer room and his fingerprint in the community room. Though the exact locations of the DNA and fingerprint evidence do raise a suspicion of his guilt, the evidence simply does not rise above suspicion. The evidence undoubtedly placed Bennett at the *location where a crime ultimately occurred;* however, it is undisputed that Bennett was a frequent visitor to the location prior to the crime, and we disagree with the State's assertion that the evidence placed Bennett *at the scene of the crime.* Viewing the evidence in a light most favorable to the State, we find the State did not present substantial circumstantial evidence to reasonably prove Bennett's guilt, but at most, the evidence presented merely raised a suspicion that Bennett committed the crimes. *See State v. Bostick,* 392 S.C. 134, 141–42, 708 S.E.2d 774, 778

(2011) (considering the circumstantial evidence relied upon by the State and finding, viewing the evidence in the light most favorable to the State, the State's evidence raised only a suspicion of guilt such that the trial court erred in failing to direct a verdict in favor of Bostick).

## CONCLUSION

Based on the foregoing, we find the trial court erred in refusing to grant Bennett's motion for directed verdict. Accordingly, Bennett's convictions are

**REVERSED.**

GEATHERS and LOCKEMY, JJ., concur.