# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Petitioner,

v.

Kevin Tyrone Bennett, Respondent.

Appellate Case No. 2014-001544

_____

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

_____

Appeal from Spartanburg County
The Honorable John C. Hayes, III, Circuit Court Judge,

_____

Opinion No. 27600
Heard October 7, 2015 – Filed January 6, 2016

_____

## REVERSED

_____

Attorney General Alan M. Wilson and Assistant Deputy Attorney General David A. Spencer, both of Columbia, for Petitioner.

Appellate Defender David Alexander, of Columbia, for Respondent.

_____

**JUSTICE HEARN:** Kevin Tyrone Bennett was convicted of petit larceny, malicious injury to property, and second degree burglary. He was sentenced to ten years' imprisonment for each offense, to be served concurrently. The court of

appeals reversed his convictions, finding the trial court erred in denying Bennett's motion for directed verdict because the State failed to present substantial circumstantial evidence of guilt. *State v. Bennett*, 408 S.C. 302, 758 S.E.2d 743 (Ct. App. 2014). We reverse and take this opportunity to more clearly articulate the standard governing whether the State has presented sufficient evidence to overcome a motion for directed verdict.

## FACTUAL/PROCEDURAL BACKGROUND

Officers responded to an alarm activated at the C.C. Woodson Community Center in Spartanburg at 3:30 a.m., and found a window shattered into "thousands of pieces" with the door next to it ajar. The officers noticed that a mounted television on the wall in the community room appeared to have been tampered with, as if someone had been attempting to remove it. A fingerprint was lifted from the manipulated television that matched Bennett's fingerprints. No other prints processed from the community room were sufficient for identification.

Officers also discovered a computer and a television were missing from the computer room. An initial inspection of the computer room revealed no blood or fingerprint evidence, but when officers returned later that morning, two drops of blood were located beneath the stand where the stolen television had been. The DNA profile from the blood droplets matched that of Bennett, with the likelihood of an unrelated individual having a matching profile being one in seventeen trillion.

Bennett was indicted for petit larceny, second degree burglary, and malicious injury to property. At trial, the director of the Center, Olivia Sartor, testified Bennett was a frequent visitor. She stated that whenever Bennett was in the Center, she would monitor him. Bennett spent most of his time in the computer room, and did not use the other rooms, such as the community room. Sartor further testified that the community room was scheduled for group meetings and generally open for public use; she did not know Bennett to be involved in any of the groups that met in that room, though she stated she was not there all hours of the day. Sartor also acknowledged the door to the room was not always locked.

At the close of the State's case, Bennett moved for a directed verdict, arguing the only evidence presented was that his fingerprint and his blood were found in a public building he was known to frequent. The trial court denied the motion, holding there was substantial circumstantial evidence from which the jury

could infer guilt.  Bennett was ultimately convicted on all three counts and sentenced to ten years' incarceration on each, to run concurrently.  Bennett appealed and the court of appeals reversed, finding the evidence created only a suspicion of guilt, and therefore, a directed verdict should have been granted in Bennett's favor.  *Bennett*, 408 S.C. at 307, 758 S.E.2d at 746.  The State petitioned for a writ of certiorari, which this Court granted.

## ISSUE PRESENTED

Did the court of appeals err in reversing the trial court's denial of Bennett's motion for directed verdict?

## LAW/ANALYSIS

The State argues the court of appeals erred in reversing the trial court's denial of directed verdict by weighing the evidence and considering alternative hypotheses.  We agree the court of appeals applied an incorrect standard in its analysis and take this opportunity to clarify the framework of a court's inquiry in determining whether substantial circumstantial evidence exists to require the denial of a directed verdict.

"On appeal from the denial of a directed verdict, this Court views the evidence and all reasonable inferences in the light most favorable to the State." *State v. Butler*, 407 S.C. 376, 381, 755 S.E.2d 457, 460 (2014).  The Court's review is limited to considering the existence or nonexistence of evidence, not its weight. *State v. Cherry*, 361 S.C. 588, 593, 606 S.E.2d 475, 478–79 (2004).  When the evidence submitted raises a mere suspicion that the accused is guilty, a directed verdict should be granted because suspicion implies a belief of guilt based on facts or circumstances which do not amount to proof. *State v. Hepburn*, 406 S.C. 416, 429, 753 S.E.2d 402, 409 (2013).  Nevertheless, a court is not required to find that the evidence infers guilt to the exclusion of any other reasonable hypothesis. *State v. Ballenger*, 322 S.C. 196, 199, 470 S.E.2d 851, 853 (1996).

In reversing the trial court's denial of directed verdict, the court of appeals concluded:

> [W]e cannot say it would be unexpected to find Bennett's DNA in the computer room and his fingerprint in the community room. Though the exact locations of the DNA and fingerprint evidence do raise a

> suspicion of his guilt, the evidence simply does not rise above suspicion. The evidence undoubtedly placed Bennett at the *location where a crime ultimately occurred;* however, it is undisputed that Bennett was a frequent visitor to the location prior to the crime, and we disagree with the State's assertion that the evidence placed Bennett *at the scene of the crime*.

*Bennett*, 408 S.C. at 307, 758 S.E.2d at 746. In our view, this discussion clearly indicates the court of appeals weighed the evidence and reversed based on its conclusion that there was a plausible alternative theory inconsistent with Bennett's guilt. This is contrary to our jurisprudence and misapprehends the court's role making this determination. As this Court clarified in *State v. Littlejohn*, 228 S.C. 324, 89 S.E.2d 924 (1955), the lens through which a court considers circumstantial evidence when ruling on a directed verdict motion is distinct from the analysis performed by the jury. Within the jury's inquiry, "it is necessary that every circumstance relied upon by the state be proven beyond a reasonable doubt; and that all of the circumstances so proven be consistent with each other and, taken together, point conclusively to the guilt of the accused to the exclusion of every other reasonable hypothesis." *Id.* at 328, 89 S.E.2d at 926. However, when ruling on a directed verdict motion, the trial court views the evidence in the light most favorable to the State and must submit the case to the jury if there is "any substantial evidence which reasonably tends to prove the guilt of the accused, or from which his guilt may be fairly and logically deduced." *Id.* at 329, 89 S.E.2d at 926. Therefore, although the *jury* must consider alternative hypotheses, the *court* must concern itself solely with the existence or non-existence of evidence from which a jury could reasonably infer guilt. This objective test is founded upon reasonableness. Accordingly, in ruling on a directed verdict motion where the State relies on circumstantial evidence, the court must determine whether the evidence presented is sufficient to allow a reasonable juror to find the defendant guilty beyond a reasonable doubt.

The evidence introduced by the State in this case was sufficient to withstand Bennett's motion for directed verdict. Forensic evidence placed Bennett within the Center and, more specifically, at the two places where the crimes had occurred. His fingerprint was found on a manipulated television set in the community room where the window had been broken and his blood was recovered just beneath the spot the stolen television had been mounted. Testimony suggested Bennett would have no reason to be in the community room because he was not involved in any of the groups that met there. Examining this evidence in the light most favorable to

the State, we find the evidence could induce a reasonable juror to find Bennett guilty.[1]

## CONCLUSION

Accordingly, we reverse the court of appeals and affirm Bennett's convictions.

**PLEICONES, C.J., BEATTY, KITTREDGE, JJ., and Acting Justice Jean H. Toal, concur.**

---

[1] Bennett argues the evidence in his case is more tenuous than in *State v. Arnold*, 361 S.C. 386, 605 S.E.2d 529 (2004), and *State v. Bostick*, 392 S.C. 134, 708 S.E.2d 774 (2011), where this Court reversed the denials of a directed verdict. We recognize in this area of ever-evolving jurisprudence our inquiry is necessarily fact-intensive; therefore, the holdings in those cases are limited to their peculiar facts.