# The Supreme Court of South Carolina

The State, Respondent,

v.

Donna Lynn Phillips, Petitioner.

Appellate Case No. 2015-000351

## ORDER

After careful consideration of the cross-petitions for rehearing, the Court grants the State's petition for rehearing, dispenses with further briefing, and substitutes the attached opinion for the opinion previously filed in this matter. With regards to Phillips's petition for rehearing, the Court is unable to discover that any material fact or principle of law has been either overlooked or disregarded, and hence, there is no basis for granting a rehearing. Accordingly, Phillips's petition for rehearing is denied.

s/ Costa M. Pleicones                 C.J.

s/ Donald W. Beatty                 J.

s/ John W. Kittredge                 J.

s/ Kaye G. Hearn                 J.

s/ Jean H. Toal                 A.J.

Columbia, South Carolina
April 20, 2016

# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Donna Lynn Phillips, Petitioner.

Appellate Case No. 2015-000351

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Pickens County
The Honorable D. Garrison Hill, Circuit Court Judge

---

Opinion No. 27607
Heard December 3, 2015 – Re-Filed April 20, 2016

---

## AFFIRMED AS MODIFIED

---

E. Charles Grose, Jr., of Grose Law Firm, of Greenwood, for Petitioner.

Attorney General Alan M. Wilson and Assistant Attorney General J. Benjamin Aplin, both of Columbia, for Respondent.

---

**JUSTICE HEARN:** Donna Lynn Phillips was convicted of homicide by child abuse and sentenced to twenty-five years' imprisonment in the death of her grandson (Child). The court of appeals affirmed her conviction. *State v. Phillips*, 411 S.C. 124, 767 S.E.2d 444 (Ct. App. 2014). Phillips now argues the court of appeals erred in affirming the denial of her motion for directed verdict because it considered the testimony offered by a co-defendant as well as Phillips' own testimony in its analysis. Although we agree the court of appeals erred in disregarding *State v. Hepburn*, 406 S.C. 416, 753 S.E.2d 402 (2013), we ultimately find the denial of Phillips' directed verdict motion was proper and we affirm as modified.

## FACTUAL/PROCEDURAL BACKGROUND

On Monday, March 17, 2008, paramedics responded to a 911 call reporting a child not breathing. Upon arriving at the house, paramedics encountered Latasha Honeycutt, Child's mother, outside on the porch. After entering the home they discovered twenty-one-month-old Child lying on the floor of his bedroom "all alone, cold, not breathing, no pulse, just laying [sic] there." Child was transported to Baptist Easley Hospital and was determined to be in an opiate-induced cardiac arrest. After resuscitation, Child was taken by helicopter to Greenville Memorial Hospital. Ultimately Child was pronounced brain dead and removed from life support; the cause of his death was documented as a hydrocodone[1] overdose.

During the course of the police investigation, it was discovered that Child had been in the care of his father, Jamie Morris, and his paternal grandmother, Phillips, the weekend preceding his death. At that time, Phillips had a prescription for Tussionex[2], which contains hydrocodone and she was eventually arrested and charged with homicide by child abuse. The State proceeded to trial against Phillips, who was tried jointly with Morris, who was charged with aiding and abetting homicide by child abuse, and Honeycutt, who was likewise charged with homicide by child abuse.

At trial, the State presented the testimony of Detective Rita Burgess of the Pickens County Sheriff's Office, who interviewed and took statements from the three defendants. Honeycutt told her Child was with Morris and Phillips from the afternoon of Friday, March 14, 2008, until the evening of Sunday, March 16, 2008. She stated that when Child arrived home around 8:00 p.m. or 9:00 p.m., he was fussy and extremely sleepy; therefore, Honeycutt immediately put him to bed. She checked on him when she woke up around 8:30 a.m. or 9:00 a.m. the following morning, but he was still sleeping. She returned at 11:00 a.m., found Child unresponsive, and awoke Brandon Roper, her boyfriend who lived with her; at that point she called 911.

Phillips spoke with Detective Burgess at Greenville Memorial Hospital and told her Child had trouble sleeping and experienced "frightmares" where he would wake up fighting and crying. Phillips further stated Child had a cough and seemed congested, so

---

[1] The opiate hydrocodone is an antitussive used to treat coughs. *Physicians' Desk Reference* 3443 (64th ed. 2010).

[2] Tussionex is a prescription medication used for the relief of cough and upper respiratory symptoms. *Physicians' Desk Reference* 3443 (64th ed. 2010).

Morris gave him generic Tylenol[3] on Sunday. Detective Burgess also noted that during their conversation, Phillips made "random statements" about Lortab, and that she hoped "[Child] didn't get any of her Lortab" or "she hoped [Child] did not get her sister's Lortab.[4]"

Charlie Lark, an investigative consultant in Pickens County, also testified about his interviews with Phillips and Morris. He noted that Morris informed him Phillips had a prescription for cough medication, but Morris stated he never saw Phillips medicate Child over the course of the weekend. Morris further explained Phillips kept her Tussionex in a wire-mesh pumpkin at the top of her closet. Although Phillips retrieved the medication on two occasions in Child's presence, Morris did not see Child ingest any of Phillips' medication; however, he did note that Child played with the Tussionex bottle while Phillips had it out of the pumpkin. Additionally, Lark stated Phillips informed him Child played with her "medicine bottles," but the tops were on them so she did not believe he could have ingested anything. She further stated although she was concerned she may have dropped a bottle on the floor and Child picked it up, she never witnessed him consume any medication.

Two witnesses testified as to the results from the tests performed on Child's blood and urine samples. The supervisor of the chemistry department at Baptist Easley Hospital testified about the drug screen performed on Child's urine and noted the results indicated the presence of hydromorphone, which is a metabolite of the opiate hydrocodone. Robert Foery, a forensic toxicologist, testified as to tests performed on the urine and blood taken from Child. Foery stated the tests revealed chlorpheniramine[5] and hydrocodone in the blood, as well as hydrocodone, hydromorphone, and chlorpheniramine in the urine. Foery stated hydrocodone and chlorphenaramine are both found in Tussionex. He further testified that the concentration of hydrocodone in Child's blood was 102 nanograms per milliliter and that the therapeutic range for an adult is 10 to 40 nanograms per milliliter. Foery could not opine on the dosage that was likely administered to Child, but stated he believed this could have been a repetitive dosing. Additionally, he testified the first dose would have been given some twenty-four to thirty-six hours prior to the blood being drawn at 12:30 p.m. on Monday, March 17, 2008. On cross-examination, Foery also stated that Lortab contained acetaminophen

---

[3] Tylenol contains acetaminophen, which is used for the treatment of minor aches and pains, nasal congestion, headaches, and temporarily reduces fever. *Physicians' Desk Reference* 1950 (59th ed. 2005).

[4] Lortab, a combination of acetaminophen and hydrocodone, is a prescription medication for the relief of moderate to moderately severe pain. *Physicians' Desk Reference* 3240 (59th ed. 2005).

[5] Chlorpheniramine is an antihistamine. *Physicians' Desk Reference* 3443 (64th ed. 2010).

in addition to hydrocodone, and because there was no acetaminophen found in the samples, he did not believe Child ingested Lortab.

The State also presented testimony from a chemistry expert who analyzed the Tussionex bottle retrieved from Phillips' home and who opined it contained both chlorpheniramine and hydrocodone. The coroner also testified, stating he concluded Child's death was a homicide caused by an overdose of hydrocodone. Without objection, he also noted that the hydrocodone "came from the grandmother's home . . . in the form of Tussionex." He determined Tussionex caused the death because of the presence of chlorpheniramine and hydrocodone in Child's bloodstream.

At the close of the State's evidence, Phillips moved for directed verdict arguing there was no evidence presented "she gave any drugs to anybody" nor was evidence presented from which a jury could conclude she did so with extreme indifference to human life. The trial court denied the motion.

Each defendant presented a defense. Phillips testified she did not give Child any medication, stating "I was not raised that way. I would not give a child any kind of medicine that was not prescribed for them. I would never give a child anything under the age of two years old." She further stated there was no way for Child to have gotten into the pumpkin without her knowledge because it was on the top shelf out of his reach and because they never left him alone.

Honeycutt called Kayla Roper, her boyfriend's sister, in her defense, who testified as to the events of Monday, March 17, 2008. She specifically described how at Baptist Easley Hospital she was near Phillips and Morris and overheard Phillips indicate that she gave Child some cough medicine over the weekend, stating "surely to God that's not what is wrong."

At the close of the evidence, Phillips again moved for directed verdict, which was denied. The jury ultimately convicted Phillips and she was sentenced to twenty-five years' imprisonment.[6]

Phillips appealed, arguing the State failed to present substantial circumstantial evidence that she acted with extreme indifference. Prior to oral argument at the court of appeals, but subsequent to the filing of her initial brief, this Court decided *State v. Hepburn*, 406 S.C. 416, 753 S.E.2d 402 (2013), which adopted the waiver rule, but

---

[6] Honeycutt was acquitted. Morris was found guilty of aiding and abetting homicide by child abuse and sentenced to twelve years' imprisonment, suspended to eight years. His convictions were affirmed on appeal and he did not petition this Court for certiorari. *State v. Morris*, Op. No. 2014-UP-112 (S.C. Ct. App. filed Mar. 12, 2014).

noted an exception to when testimony is offered by co-defendants.[7]  *Id.* at 436, 752 S.E.2d at 412.  Phillips' appellate counsel submitted a letter to the court listing *Hepburn* as a supplemental citation, but did not specify the proposition for which it was being cited.  During oral argument, the court of appeals focused on Kayla Roper's testimony and the fact it provided direct not circumstantial evidence, ignoring that under *Hepburn,* her testimony could not be considered in reviewing the denial of directed verdict.

Ultimately, the court of appeals affirmed her conviction.  Specifically, the court found Kayla Roper's testimony provided direct evidence of child abuse therefore, relying on Phillips' testimony that she would never give medicine to Child coupled with the medical evidence of the extreme levels of hydrocodone within Child's blood, there was direct and circumstantial evidence presented of extreme indifference sufficient to withstand Phillips' directed verdict motion.  *Phillips*, 411 S.C. at 134–36, 767 S.E.2d at 448–50.  Phillips filed a petition for rehearing, arguing the court of appeals erred in failing to apply the waiver rule enunciated in *Hepburn* and in considering Phillips' testimony as well as evidence presented by Honeycutt.  The court of appeals denied the petition.  This Court granted certiorari.

## ISSUE PRESENTED

Did the court of appeals err in affirming the denial of Phillips' directed verdict motion?

## LAW/ ANALYSIS

Phillips argues the court of appeals failed to apply applicable precedent and therefore erred in its affirmance of the trial court's denial of her directed verdict motion.  Although we agree the court of appeals should have applied *Hepburn*, we nevertheless hold sufficient evidence was presented to withstand Phillips' motion for directed verdict.  We therefore affirm the court of appeals as modified, writing only to reiterate an appellate court's proper framework in analyzing the denial of directed verdict in cases where *Hepburn* is implicated.

In reviewing a motion for directed verdict, the trial court is concerned with the existence of evidence, not with its weight.  *State v. Curtis*, 356 S.C. 622, 633 591 S.E.2d 600, 605 (2004).  When the evidence presented merely raises a suspicion of the accused's guilt, the trial court should not refuse to grant the directed verdict motion. *State v. Cherry*, 361 S.C. 588, 594, 606 S.E.2d 475, 478 (2004).  However, the trial

---

[7] Under the waiver rule, a defendant who presents evidence in his own defense waives the right to have the court review the denial of directed verdict based solely on the evidence presented in the State's case-in-chief.  *Hepburn*, 406 S.C. at 431, 753 S.E.2d at 410.

court must submit the case to the jury if there is "any substantial evidence which reasonably tends to prove the guilt of the accused, or from which his guilt may be fairly and logically deduced." *State v. Mitchell*, 341 S.C. 406, 409, 535 S.E.2d 126, 127 (2000).

As we recently stated in *State v. Bennett*, "the lens through which a court considers circumstantial evidence when ruling on a directed verdict motion is distinct from the analysis performed by the jury." Op. No. 27600 (S.C. Sup. Ct. filed January 6, 2016) (Shearouse Adv. Sh. No. 1 at 19). The jury's focus is on determining whether every circumstance relied on by the State is proven beyond a reasonable doubt, and that all of the circumstances be consistent with each other and, taken together, point conclusively to the guilt of the accused to the exclusion of every other reasonable hypothesis. *State v. Littlejohn*, 228 S.C. 324, 328, 89 S.E.2d 924, 926 (1955). The trial court must view the evidence in the light most favorable to the State when ruling on a motion for directed verdict, and must submit the case to the jury if there is "any substantial evidence which reasonably tends to prove the guilt of the accused, or from which his guilt may be fairly and logically deduced." *Id.* at 329, 89 S.E.2d at 926. As we noted in *Bennett,* while "the *jury* must consider alternative hypotheses, the *court* must concern itself solely with the existence or non-existence of evidence from which a jury could reasonably infer guilt." *Bennett*, Op. No. 27600 (S.C. Sup. Ct. filed January 6, 2016) (Shearouse Adv. Sh. No. 1 at 19).

In *Hepburn*, the appellant argued that in reviewing the propriety of the trial court's denial of her mid-trial motion for directed verdict, the appellate court should only review the evidence presented by the State in its case-in-chief. The State sought to augment the evidence presented in its case-in-chief with evidence offered by a co-defendant and with evidence offered by appellant in opposition to the co-defendant's evidence. Accordingly, the appellant requested we overrule the decision in *State v. Harry*, 321 S.C. 273, 468 S.E.2d 76 (Ct. App. 1996), wherein the court of appeals held that when a defendant presents evidence in his own defense, he waives the right to limit the appellate court's consideration of the denial of his motion for directed verdict to only the evidence presented in the State's case-in-chief. Declining the appellant's invitation, we expressly adopted the reasoning in *Harry* and the waiver rule propounded therein.

Consistent with the approach taken in other states, we also acknowledged in *Hepburn* the inapplicability of the waiver rule to evidence offered by a co-defendant. Thus, we held that although we adopted the waiver rule, because the co-defendant's testimony implicated appellant, and because appellant's testimony merely rebutted the testimony of the co-defendant, neither testimony could be considered in assessing the propriety of the trial court's denial of appellant's directed verdict motion.

The State contends Phillips has not preserved her *Hepburn* argument because this precise point—that the testimony offered by a co-defendant should not be considered in reviewing a motion for directed verdict—was never squarely presented to the court of appeals. We acknowledge Phillips never specifically argued until her petition for rehearing that the review of her motion should be limited to the evidence presented in the State's case; however, this does not preclude her from arguing this now, nor, more fundamentally, can it prevent this Court from applying the proper standard of review. Phillips has consistently argued the denial of her motion for directed verdict was in error. Requesting that the Court consider *Hepburn* in its analysis is not a distinct argument, but merely adds nuance to the inquiry engaged in by the appellate court. Further, it is incumbent upon the court of appeals to apply this Court's precedent. *See* S.C. Const. art. V, § 9 ("The decisions of the Supreme Court shall bind the Court of Appeals as precedents."). Simply because a party does not expressly articulate the relevance of a particular case does not excuse the court of appeals from failing to apply controlling precedent. While it may have been preferable for Phillips to make this argument during oral argument, the court of appeals should not have overlooked recent case law—especially where it was expressly cited. Moreover, the court of appeals had the opportunity to correct its error on rehearing but declined to do so. We therefore reject the State's argument that Phillips' reliance on *Hepburn* is not preserved.

Turning first to Phillips' contention that her own testimony should be excluded, we disagree and find it falls squarely within our articulation of the waiver rule in *Hepburn.* In support of her argument, Phillips asserts her testimony was a preemptive response to Honeycutt's defense. Temporally, her defense preceded Honeycutt's; we do not find her testimony can be considered responsive to Honeycutt. Accordingly, under *Hepburn*, Phillips waived her right to have this Court review the sufficiency of the State's case based solely on its case-in-chief when she chose to testify in her own defense.

However, we find it was improper for the court of appeals to consider the testimony of Kayla Roper in reviewing the denial of the directed verdict motion. The State argues *Hepburn*'s exception to the waiver rule is limited to the testimony of a co-defendant and does not extend to other witnesses called by a co-defendant. Specifically, it contends that unlike calling a defendant, the State could have called Kayla Roper in reply and presented precisely the same testimony. We disagree. Although in the discussion of the waiver rule the Court noted the unfairness of allowing the State to use to its advantage evidence it could not otherwise elicit—testimony of a co-defendant—it also clearly stated that "[t]he rationale behind the co-defendant exception pertains to control." *Id.* at 435, 753 S.E.2d at 412. It further explained,

> Requiring the defendant to accept the consequences of his decision to challenge directly the government's case affirms the adversary process. But the decision of a co[-]defendant to testify *and produce witnesses* is not subject to the defendant's control like testimony the defendant elects to produce in his own defensive case, nor is such testimony within the government's power to command in a joint trial.

*Hepburn*, 406 S.C. at 435, 753 S.E.2d at 412 (quoting *United States v. Belt*, 574 F.2d 1234, 1237 (5th. Cir. 1978) (emphasis added)). Thus, in *Hepburn* we grounded our holding in the notion that the defendant has no control over the testimony of a co-defendant *or his witnesses*, and it would therefore be unfair to allow the State to use that evidence to support its case. Nor do we accept the State's misplaced argument that it could have called Kayla Roper in reply; it did not and it cannot now rewrite history and rely on that testimony simply because it *could* have called her as a witness. Accordingly, we do not consider Kayla Roper's testimony presented by Honeycutt in reviewing Phillips' directed verdict motion, and it was error for the court of appeals to have done so. Today we clarify our holding in *Hepburn* that the waiver rule is inapplicable not only to testimony of a co-defendant but also to testimony *offered* by a co-defendant, as in this case, Kayla Roper's testimony.

However, considering the evidence presented in the State's case-in-chief and in Phillips' defense, we hold the trial court properly denied her motion for directed verdict. Section 16-3-85 of the South Carolina Code (2003) provides "A person is guilty of homicide by child abuse if the person . . . causes the death of a child under the age of eleven while committing child abuse or neglect, and the death occurs under circumstances manifesting an extreme indifference to human life . . . ." "[I]ndifference in the context of criminal statutes has been compared to the conscious act of disregarding a risk which a person's conduct has created, or a failure to exercise ordinary or due care." *State v. Jarrell*, 350 S.C. 90, 98, 564 S.E.2d 362, 367 (Ct. App. 2002). For purposes of this statute, "extreme indifference" has been characterized as "a mental state akin to intent characterized by a deliberate act culminating in death." *McKnight v. State*, 378 S.C. 33, 48, 661 S.E.2d 354, 361 (2008) (quoting *Jarrell*, 350 S.C. at 98, 564 S.E.2d at 367).

We find there is direct and circumstantial evidence that, when construed in the light most favorable to the State, could allow the jury to conclude Phillips acted with extreme indifference in administering the medication that caused Child's death. The testimony indicates the administration of multiple doses of Tussionex and a concentration of at least two-and-a-half times the therapeutic amount of the drug in Child's blood. It is common knowledge that giving another person, particularly a toddler, drugs not prescribed to him is inherently dangerous. Importantly, Phillips herself testified she would never give Child medication not prescribed to him and nor

would she give any medication to a child under the age of two. There is no question that Child was in the care and custody of Phillips and her son at the time of the lethal dose; Phillips herself testified he was never alone during the weekend. Accordingly, the evidence was sufficient to allow a reasonable juror to conclude Phillips acted with extreme indifference to human life in administering the Tussionex.

## CONCLUSION

We affirm as modified the court of appeals' opinion, holding that under *Hepburn*, Phillips' testimony, but not Kayla Roper's, can be considered in the Court's review of the denial of directed verdict. Because there was sufficient evidence under that standard to withstand Phillips' directed verdict motion, we affirm her conviction and sentence.

**PLEICONES, C.J., BEATTY, KITTREDGE, JJ., and Acting Justice Jean H. Toal, concur.**