# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Charles Tillman, Appellant.

Appellate Case No. 2018-000495

———————————

Appeal From Abbeville County
Frank R. Addy, Jr., Circuit Court Judge

———————————

Opinion No. 5805
Heard November 4, 2020 – Filed February 17, 2021

———————————

**AFFIRMED**

———————————

E. Charles Grose, Jr., of Grose Law Firm, of Greenwood,
for Appellant.

Attorney General Alan McCrory Wilson, Chief Deputy
Attorney General W. Jeffrey Young, Deputy Attorney
General Donald J. Zelenka, Senior Assistant Deputy
Attorney General Melody Jane Brown, Assistant
Attorney General Samuel Marion Bailey and Assistant
Attorney General Caroline Scrantom, all of Columbia,
for Respondent.

———————————

**KONDUROS, J.:** Charles Tillman was convicted for the murder of Christie
Stutler (Victim), and for the possession of a firearm during the commission of a
violent crime. He appeals his convictions, arguing the trial court erred in denying
his motions for directed verdict and new trial, in admitting certain postdeath

photographs of Victim, and in denying his request for an *Edwards*[1] charge regarding circumstantial evidence in the case. We affirm.

## FACTS/PROCEDURAL BACKGROUND

Tillman and Victim were in a long-term on-again/off-again relationship. In November of 2016, the pair were living together in a trailer located on Tillman's mother's property on Bell Road in Abbeville County. According to his video-recorded statement to police, Tillman went to work at approximately 9:00 a.m. on November 8 with J.C. Boggs and Tillman's cousin, Walter Tillman. The three performed various handyman services. When Tillman returned home around 6:00 p.m., he entered the trailer and found Victim on the bed lying on her stomach with her head turned and hair covering her face. The crime scene photographs showed blood down the side of the mattress near Victim's head. However, no evidence of how Victim was harmed was visible. Tillman called 911 and stated Victim was dead and had committed suicide by shooting herself. At one point during the recorded call, Tillman's mother can be heard mentioning a gun.

When police arrived on location, approximately six minutes after the 911 call was placed, they secured the scene. A burning kerosene heater was located relatively close to the bed. Victim was wearing a t-shirt but no pants or underwear. After further investigation, authorities determined Victim had been shot in the head and shin. Two additional bullet holes were found in the bedroom ceiling and wall. Upon further investigation, police found the murder weapon, a .22 caliber rifle, in an inoperable car that Tillman and Victim used for storage located on the property. The coroner determined Victim had not committed suicide and her time of death was between 11:00 p.m. on November 7 and 11:00 a.m. on November 8.

During interviews with police, Tillman consistently stated Victim was alive when he left for work that morning. However, his responses to pertinent questions were evasive. Tillman never acknowledged the presence of a gun in the trailer or mentioned having access to a gun until confronted by police after the murder weapon was found. He could not account for the last time he might have held the gun; he could not remember when he might have last accessed the junk car, nor could he explain why his mother would have mentioned a gun on the 911 call. He

---

[1] *State v. Edwards*, 298 S.C. 272, 379 S.E.2d 888 (1989) (*abrogated by State v. Cherry*, 361 S.C. 588, 606 S.E.2d 475 (2004), *as recognized in State v. Logan*, 405 S.C. 83, 747 S.E.2d 444 (2013)).

explained he *assumed* Victim had committed suicide by shooting herself because she had talked about doing so before.

At trial, Tillman's mother testified she had stopped by the trailer to see if Victim wanted to accompany her to the laundromat. Victim did not open the door, but Tillman's mother thought she heard Victim say something and saw a shadow move in the trailer. She acknowledged she did not initially share this information with police. Additionally, she could not explain why she would have mentioned a gun on the 911 call.

Victim's DNA and DNA that could belong to Tillman were found on the murder weapon and Tillman's DNA was found in Victim's fingernail clippings. A very small amount of gunshot residue (GSR) was found on Tillman's shirt. Dr. Brett Woodward, a forensic pathologist, testified Victim died from a close range gunshot wound to the head. He further testified as to bruising and other traumatic injuries on Victim's body.

> There were multiple bruises, both of a recent and a remote nature. You can only judge a bruise by it's recent, it's less than about 12 to six hours, or it's remote, it's more than 18 hours when it begins to show changes in coloration. Obviously, some people bruise more severely than other people with the same trauma, but you can only judge the time between the bruises in that particular way. We saw some bruises, which suggested fingertips being pressed against the body in an effort to manipulate, control or hold the body. We saw scratches on the body which were consistent with another individual's fingerprints – or excuse me fingers losing contact with the body and the nails scratching the victim, and we saw burn injuries.

At the conclusion of the State's case, Tillman moved for a directed verdict. The trial court denied the motion, explaining there was "substantial circumstantial evidence and direct evidence . . . from which the jury could conclude that the Defendant is the one who took the life of [Victim]." Tillman offered the testimony of his co-workers, Walter Tillman and J.C. Boggs, and his uncle Willie Tillman in his defense. At the conclusion of his presentation, Tillman renewed his motion for directed verdict, which the trial court denied. Tillman was convicted of murder

and possession of a firearm during the commission of a violent crime. He was sentenced to life in prison without the possibility of parole. This appeal followed.

## LAW/ANALYSIS

### I.  Denial of Motion for Directed Verdict

Tillman contends the trial court erred in denying his directed verdict motion because the State did not present substantial circumstantial evidence he killed Victim. We disagree.

"On appeal from the denial of a directed verdict, this [c]ourt views the evidence and all reasonable inferences in the light most favorable to the State." *State v. Butler*, 407 S.C. 376, 381, 755 S.E.2d 457, 460 (2014). "The [c]ourt's review is limited to considering the existence or nonexistence of evidence, not its weight." *State v. Bennett*, 415 S.C. 232, 235, 781 S.E.2d 352, 353 (2016).

"When the evidence submitted raises a mere suspicion that the accused is guilty, a directed verdict should be granted because suspicion implies a belief of guilt based on facts or circumstances which do not amount to proof." *Id*. at 236, 781 S.E.2d at 353. "Nevertheless, a court is not required to find that the evidence infers guilt to the exclusion of any other reasonable hypothesis." *Id*. at 236, 781 S.E.2d at 354. "Circumstantial evidence . . . gains its strength from its combination with other evidence, and all the circumstantial evidence presented in a case must be considered together to determine whether it is sufficient to submit to the jury." *State v. Rogers*, 405 S.C. 554, 567, 748 S.E.2d 265, 272 (Ct. App. 2013).

Multiple pieces of circumstantial evidence, when put together, create more than mere suspicion Tillman killed Victim. DNA consistent with Tillman's was found on the murder weapon and Victim's fingernail clippings. One particle of GSR was found on the right sleeve of Tillman's shirt. Tillman was with Victim from 11:00 p.m. until approximately 9:00 a.m., and her time of death was determined to be between 11:00 p.m. and 11:00 a.m. Victim had recent and remote bruising on her body and cigarette burns although Tillman told police he never physically harmed her. Tillman indicated Victim had shot herself during his 911 call even though the cause of death was not evident based on the position of Victim's body when discovered. The murder weapon was found hidden in a car on the Bell Road property in which Tillman and Victim apparently stored clothing and other items. Tillman never mentioned the gun to police until after it was found and could not give any timeframe for when he might have last touched the gun or the car in

which it was discovered. The bullets that killed Victim matched a cache of bullets found in Tillman's trailer. At trial, Tillman's mother admitted that during the 911 call, she could be heard asking Tillman about having a gun at the trailer.[2] She initially denied mentioning a gun on the recording but later admitted it, telling police "she had been wondering to herself why she would say that." Tillman's mother testified at trial that she had called out to Victim about going to the laundromat with her the morning of the murder after Tillman had left for work. Tillman's mother stated Victim said something she could not understand, and she saw a shadow move near the door. Tillman's mother did not initially report this to police.

Taken cumulatively and in the light most favorable to the State, the evidence described above is sufficient to withstand directed verdict. As the trial court noted, taken in isolation, the evidence may only have raised a suspicion of Tillman's guilt. However, when put together and coupled with Tillman's inconsistent and implausible statements to police, the threshold required to withstand directed verdict was met.[3] Many of the items on this list could be challenged. For example, Victim and Tillman lived together so his DNA could have been under her nails without a struggle. Tillman could have gotten GSR on his shirt just by being in the room where Victim was shot. However, it was within the *jury's* purview to determine what each piece of evidence meant, how the pieces fit together, and whether the sum of the evidence was sufficient to convict Tillman. *See State v.*

---

[2] At trial, Tillman's mother specifically denied asking Tillman whether he had a gun at the trailer *the previous day*. While the contents of the 911 tape are not always clear, Tillman's mother can be heard saying "yesterday" during her query to Tillman. She also denied having further conversation with Tillman during the call although a muffled conversation can be heard in the background on the recording.
[3] In *State v. Hepburn*, 406 S.C. 416, 753 S.E.2d 402 (2013), a case cited by Tillman, the court determined any "demeanor" evidence gleaned from the defendant's testimony at trial could not be considered in evaluating the sufficiency of the State's evidence. In reversing the denial of directed verdict the court stated "*absent* [the co-defendant's] interested testimony *and the ability to assess Appellant's credibility on the witness stand*, the State did not present substantial circumstantial evidence sufficient to warrant the denial of Appellant's midtrial directed verdict motion." *Id*. at 442, 753 S.E.2d at 416 (emphases added). Contrastively, in this case, because the State presented Tillman's police interviews in its case-in-chief, the jury could have properly drawn determinations about his credibility and the veracity of his explanations to police.

*Mealor*, 425 S.C. 625, 654, 825 S.E.2d 53, 69 (Ct. App. 2019) ("[A]lthough the *jury* must consider alternative hypotheses, the *court* must concern itself solely with the existence or non-existence of evidence from which a jury could reasonably infer guilt."), *cert. denied*, S.C. Sup. Ct. Order dated Aug. 5, 2019; *see also Bennett*, 415 S.C. at 237 n.1, 781 S.E.2d at 354 n.1 ("We recognize in this area of ever-evolving jurisprudence our inquiry is necessarily fact-intensive; therefore, the holdings in those cases are limited to their peculiar facts.").

Based on all of the foregoing, we affirm the trial court's denial of Tillman's directed verdict motion.

## II.     Admission of Photographs

Next, Tillman argues the trial court erred in admitting certain photographs depicting the Victim's body at the scene and from her autopsy. He maintains the photographs were not relevant because Tillman had stipulated the death was a homicide and, even if relevant, were more prejudicial than probative. We disagree.

"The relevancy, materiality, and admissibility of photographs as evidence are matters left to the sound discretion of the trial court." *State v. Johnson*, 338 S.C. 114, 122, 525 S.E.2d 519, 523 (2000). "However, photographs calculated to arouse the sympathy or prejudice of the jury should be excluded if they are irrelevant or unnecessary to the issues at trial." *Id.*

The trial court held a lengthy pretrial hearing to determine which photographs would be admitted. Even though the manner of death was admitted, the photographs were very relevant to establish what Tillman saw upon arriving at the scene and whether that scene would support his having characterized the incident as a suicide. *See State v. Hawes*, 423 S.C. 118, 130-31, 813 S.E.2d 513, 519-20 (Ct. App. 2018) (affirming the admission of photographs including the victim's body, which reflected the crime scene); *see also State v. Kelley*, 319 S.C. 173, 178, 460 S.E.2d 368, 370 (1995) (affirming the admission of photographs corroborating witnesses' testimonies regarding the discovery of the crime scene). Additionally, the autopsy photographs were used to show bruising and cigarette burns, which would have been consistent with Tillman and Victim having had physical altercations in the past, something Tillman denied.

The photographs were probative on the two points just discussed, and the trial court took measured steps to minimize their prejudicial impact. It ordered the State to cover the Victim's face in one photograph and to reproduce several of the

photographs in black and white to lessen their graphic nature. We conclude the trial court did not abuse its discretion in admitting the disputed photographs as they were relevant to matters in controversy, were highly probative, and were not unduly prejudicial.

### III. Remaining Issues on Appeal

Tillman raises several other arguments on appeal. We find these remaining issues are without merit. As to the trial court's failure to define the standard of review it applied in evaluating Tillman's motion for directed verdict, the trial court found there was substantial circumstantial evidence Tillman committed the crimes of which he was accused. *See State v. Arnold*, 361 S.C. 386, 389, 605 S.E.2d 529, 531 (2004) ("The trial court has a duty to submit the case to the jury where the evidence is circumstantial if there is substantial circumstantial evidence which reasonably tends to prove the guilt of the accused or from which his guilt may be fairly and logically deduced."). Likewise, Tillman's contention the trial court erred in refusing to give the substantial circumstantial evidence charge as stated in *State v. Edwards*, 298 S.C. 272, 379 S.E.2d 888 (1989), is without merit. The trial court was bound to give the charge it gave—the charge set forth by our supreme court in *State v. Logan*, 405 S.C. 83, 747 S.E.2d 444 (2013). *See id.* at 98-99, 747 S.E.2d at 451-52 (disapproving of the "every other reasonable hypothesis" language in *Edwards* because it came close to shifting the burden of proof to the defendant to provide an alternate theory that would prove his innocence); *see also State v. Cheeks*, 400 S.C. 329, 342, 733 S.E.2d 611, 618 (Ct. App. 2012) ("[T]his court lacks the authority to rule against prior published precedent from our supreme court, but is bound by the decisions of the supreme court.").

Additionally, we reject Tillman's argument the trial court erred in denying his motion for mistrial after the State asked State Law Enforcement Division Agent Bo Barton questions about his experience as a criminal profiler. The trial court's curative instruction was lengthy and unequivocal in dispelling any notion that it had qualified Agent Barton as an expert in any legally legitimate scientific field. *See State v. Walker*, 366 S.C. 643, 658, 623 S.E.2d 122, 129 (Ct. App. 2005) ("Generally, a curative instruction is deemed to have cured any alleged error."). Finally, Tillman maintains this court should overturn his conviction based on the cumulative error doctrine. Because we find the issues raised by Tillman were properly decided by the trial court, his cumulative error argument is unavailing. *See State v. Thompson*, 420 S.C. 386, 404, 803 S.E.2d 44, 53 (Ct. App. 2017) ("Because we have found no errors in regard to the other issues [the appellant]

raised on appeal and [the appellant] does not point to any other errors made by the trial court, [his cumulative error argument] is without merit.").

## CONCLUSION

Based on all of the foregoing, Tillman's convictions for murder and possession of a firearm during the commission of a violent crime are

**AFFIRMED.**

**LOCKEMY, C.J., and MCDONALD, J., concur.**