**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Tiesh Annette Rhue, Appellant.

Appellate Case No. 2021-001275

———————

Appeal From Georgetown County
Robert J. Bonds, Circuit Court Judge

———————

Unpublished Opinion No. 2024-UP-264
Heard June 6, 2024 – Filed July 17, 2024

———————

**AFFIRMED**

———————

Elizabeth Anne Franklin-Best and Jillian Marie Lesley, both of Elizabeth Franklin-Best, P.C., of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Deputy Attorney General Donald J. Zelenka, and Senior Assistant Deputy Attorney General Melody Jane Brown, all of Columbia; and Solicitor Jimmy A. Richardson, II, of Conway, all for Respondent.

———————

**PER CURIAM:** In this criminal matter, Tiesh Rhue appeals her convictions for the murder of Leon Harrison, Jr. (Victim) and obstruction of justice, arguing the trial court erred in (1) failing to suppress evidence obtained pursuant to a search warrant for lack of probable cause, (2) admitting autopsy photographs, and (3) denying her motion for a directed verdict. We affirm.

1. Viewing the totality of the circumstances, with deference to the magistrate, we agree sufficient probable cause supported the issuance of the third search warrant. *See State v. Frasier*, 437 S.C. 625, 633, 879 S.E.2d 762, 766 (2022) ("[A]ppellate review of a motion to suppress based on the Fourth Amendment involves a two-step analysis."); *id.* at 633–34, 879 S.E.2d at 766 (providing that under this "dual inquiry," an appellate court will "review the trial court's factual findings for any evidentiary support" and any questions of law de novo); *State v. Crummey*, Op. No. 6059 (S.C. Ct. App. filed May 8, 2024) (Howard Adv. Sh. No. 17 at 23) (noting appellate courts defer to a magistrate's determination of whether probable cause existed to support issuance of a search warrant). Extracting the illegally obtained evidence from the two prior searches, the third warrant provides that a decomposed body identified as Victim was found bound by speaker wire in the Black River, with the last place Victim was seen being the Rhue residence. *See State v. Kinloch*, 410 S.C. 612, 617, 767 S.E.2d 153, 155 (2014) ("A warrant is supported by probable cause if, given the totality of the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place."); *Crummey*, Op. No. 6059 (S.C. Ct. App. filed May 8, 2024) (Howard Adv. Sh. No. 17 at 23) (providing that "magistrates are concerned with probabilities and not certainties" when determining whether the issuance of a search warrant is appropriate (quoting *State v. Dupree*, 354 S.C. 676, 683, 583 S.E.2d 437, 441 (Ct. App. 2003))). Considering the body's state of decomposition, the evidence of homicidal activity, and that the Rhue residence was the last place Victim was seen alive before the recovery of his remains and his last known residence, it is logical that police would seek to search the premises as part of the ensuing homicide investigation. Indeed, authorities would have been remiss *not* to search the last place Victim was seen alive.

Furthermore, we hold the trial court properly found evidence seized by authorities during the first and second search warrants of the Rhue residence would have been inevitably discovered and therefore exclusion was unnecessary. *See State v. Moore*, 429 S.C. 465, 478–79, 839 S.E.2d 882, 889 (2020) ("The 'fruit of the poisonous tree' doctrine provides that evidence must be excluded if it would not have come to light but for the illegal actions of the police, and the evidence has been obtained by the exploitation of that illegality." (quoting *State v. Copeland*,

321 S.C. 318, 323, 468 S.E.2d 620, 624 (1996))). From reviewing the record, it is evident that investigators would have discovered the carpet and blood stain evidence when executing the third warrant in furtherance of a homicide investigation; the only difference being such seizures would be permitted within the scope of that warrant. *See id.* at 481, 839 S.E.2d at 890 (providing that under the inevitable discovery doctrine, "illegally obtained information may nevertheless be admissible if the prosecution can establish by a preponderance of the evidence that the information would have *ultimately been discovered by lawful means*" (quoting *State v. Cardwell*, 425 S.C. 595, 601, 824 S.E.2d 451, 454 (2019) (emphasis added))). Thus, the trial court properly admitted the evidence seized from all three search warrants.

2. Rhue contends the trial court erred in admitting autopsy photographs because numerous pictures of the bindings were unnecessarily duplicative and the gruesome photographs showing the whole body lacked probative value. We agree. Recently, our supreme court has scrutinized the admission of gruesome photographs, informing our analysis of the images at issue. *See State v. Benton*, Op. No. 28185 (S.C. filed Jan. 17, 2024) (Howard Adv. Sh. No. 2 at 27–28); *State v. Heyward*, 441 S.C. 484, 501–04, 895 S.E.2d 658, 667–69 (2023); *State v. Nelson*, 440 S.C. 413, 419–27, 891 S.E.2d 508, 511–15 (2023); *State v. Jones*, 440 S.C. 214, 258–64, 891 S.E.2d 347, 370–73 (2023). "'The determination of the relevancy and materiality of a photograph is left to the sound discretion of the trial judge' whose 'rulings will not be disturbed absent a showing of probable prejudice.'" *Jones*, 440 S.C. at 259, 891 S.E.2d at 370 (quoting *State v. Kornahrens*, 290 S.C. 281, 288, 350 S.E.2d 180, 185 (1986)). "Photographs are relevant if they 'depict the bodies of the murder victims in substantially the same condition in which the defendant left them.'" *Id.* at 259, 891 S.E.2d at 371 (quoting *Kornahrens*, 290 S.C. at 289, 350 S.E.2d at 185). "[I]t is well-established that photographs calculated to arouse the sympathies and prejudices of the jury are to be excluded if they are irrelevant or unnecessary to the issues at trial." *Id.* (alteration in original) (quoting *State v. Middleton*, 288 S.C. 21, 24, 339 S.E.2d 692, 693 (1986)).

Similar to the autopsy photographs in *Jones*, we find the photos at issue here lacked probative value. *See id.* at 262, 891 S.E.2d at 372. The full body photographs do not depict Victim in substantially the same condition as when he was likely disposed of by the killer. Indeed, the decomposition of the body prevented discovery or corroboration of a specific cause of death or the circumstances leading to the fatality. According to forensic pathologist Dr. Cynthia Schandl, the only demonstratively clear evidence of malice was the

binding of Victim's hands and feet with speaker wire, which was sufficiently established by the photographs taken at a closer angle, the x-rays, Dr. Schandl's testimony, etc.

However, we hold the ultimate effect of the photographs' admission was harmless. *See Jones*, 440 S.C. at 264, 891 S.E.2d at 373 (holding erroneous admission of gruesome autopsy photographs was harmless when defendant failed to establish prejudice). While gruesome and unnecessary to the State's case, we find the lack of evidence establishing the physical circumstances that ultimately led to Victim's demise ironically protects against the dangers of unfair prejudice. The photos fail to corroborate any actions specifically taken by Rhue. Rather, they are duplicative depictions of the bindings and Victim's state of decomposition. Accordingly, Rhue failed to establish prejudice suffered from the admission of the photographs, as the more damaging evidence involved her cell phone activity, relationship history with the victim, and seized evidence from within the home. *See Heyward*, 441 S.C. at 505, 895 S.E.2d at 669 ("We have repeatedly observed we will not reverse a criminal conviction for the erroneous admission of evidence unless the defendant shows on appeal the error was prejudicial.").

3. We hold the trial court did not err in denying Rhue's motion for a directed verdict. "On appeal from the denial of a directed verdict, [an appellate court] views the evidence and all reasonable inferences in the light most favorable to the State." *State v. Bennett*, 415 S.C. 232, 235, 781 S.E.2d 352, 353 (2016) (quoting *State v. Butler*, 407 S.C. 376, 381, 755 S.E.2d 457, 460 (2014)). "The Court's review is limited to considering the existence or nonexistence of evidence, not its weight." *Id.* "When the evidence submitted raises a mere suspicion that the accused is guilty, a directed verdict should be granted because suspicion implies a belief of guilt based on facts or circumstances which do not amount to proof." *Id.* at 236, 781 S.E.2d at 353. "Nevertheless, a court is not required to find that the evidence infers guilt to the exclusion of any other reasonable hypothesis." *Id.* at 236, 781 S.E.2d at 354.

Undoubtedly, the evidence concerning all three defendants is intertwined, making it difficult to ascertain whether the circumstantial evidence presented against Rhue exceeds mere suspicion of guilt. However, when cumulatively viewing the record, we find the State introduced evidence to withstand a directed verdict. As noted by the trial court in its ruling, forensic evidence established Victim was killed in some act of homicidal violence. On the night of his disappearance, Victim was last seen by Rhue at their residence where they had an argument, after which Victim allegedly packed his belongings and left. Rhue repeatedly called and exchanged

harsh words with Victim's paramour from Victim's phone around the time of the alleged argument. Rhue and Victim often fought over money, and evidence showed Rhue attempted to withdraw money from the bank account she shared with Victim on the night of his disappearance. Interestingly, Rhue informed police that on the night of the fight, she took a shot of tequila and went to sleep in her son's bedroom, rather than the bedroom she shared with Victim. During the search warrants, police obtained blood evidence matching Victim, which was collected from their shared bedroom in an area where someone had cut out part of the carpet and covered it with blankets and clothes. Cell phone evidence showed Rhue did not leave the residence all night, but records showed all three defendants turned off their phones for a period of time during the night Victim was last seen. Both Rhue's father (Father) and brother (Brother) told police Victim and Rhue argued on the night he disappeared, and testimony showed Brother confessed to the murder on two occasions to his friends, implying he dealt with Victim after Rhue called Brother following one of their arguments. Father lied to police about his whereabouts, and video surveillance footage showed Father and Brother buying two bottles of hydrogen peroxide at Walmart around 1:00 a.m. on the night in question. When examining these facts in a light most favorable to the State, the evidence could induce a reasonable juror to find Rhue guilty. *See Bennett*, 415 S.C. at 237, 781 S.E.2d at 354 ("[I]n ruling on a directed verdict motion where the State relies on circumstantial evidence, the court must determine whether the evidence presented is sufficient to allow a reasonable juror to find the defendant guilty beyond a reasonable doubt.").

Based on the foregoing, Rhue's convictions are

**AFFIRMED.**

**WILLIAMS, C.J., and KONDUROS and TURNER, JJ., concur.**