# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Devonta Edward Williams, Appellant.

Appellate Case No. 2019-000222

————————————

Appeal From Horry County
Steven H. John, Circuit Court Judge

————————————

Opinion No. 5918
Heard March 15, 2022 – Filed June 15, 2022

————————————

**AFFIRMED**

————————————

Appellate Defender Joanna Katherine Delany, of
Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Deputy
Attorney General Donald J. Zelenka, Senior Assistant
Deputy Attorney General Melody Jane Brown, and
Assistant Attorney General Tommy Evans, Jr., all of
Columbia; and Solicitor Jimmy A. Richardson, II, of
Conway, for Respondent.

————————————

**HEWITT, J.:** This case calls on us to again address the specific intent crime of
attempted murder. Devonta Edward Williams argues the trial court should have
directed a verdict of acquittal because he sees no evidence he intended to kill the
particular individual named in one of his attempted murder indictments. The trial
court sent the case to the jury, relying on transferred intent.

The trial court could not have foreseen that this court would subsequently hold transferred intent does not apply to attempted murder. Even so, we are convinced there was evidence at the directed verdict stage from which a jury could find Williams intended to kill the individual in question because the individual was within the zone of danger created by Williams' conduct. For that reason, we affirm.

**FACTS**

An Horry County grand jury indicted Williams for the murder of one man and the attempted murder of two others. Williams proceeded to a jury trial. This appeal concerns his conviction for the attempted murder of Letrevias Knox.

Witnesses testified Williams approached a group of approximately eight people who were gathered outdoors, asked someone in the group "where's my money," and began shooting. Knox was in the group. He said he was shot in the shoulder and the back of a leg as he ran away. Multiple witnesses said Williams was the only person they saw with a gun during the incident.

Williams moved for a directed verdict on all charges. As relevant here, Williams argued the State did not present evidence he deliberately intended to shoot Knox. For his part, Knox had already testified that he did not know who shot him or why he was shot.

The State argued Williams' intent to injure other people could be firmly established by the testimony that Williams purposefully approached the scene, demanded money, opened fire, and was the only person seen with a gun. The State also argued that under transferred intent, "malice follows the bullet." As already noted, the trial court cited transferred intent in denying the directed verdict motion.

Williams testified immediately after his directed verdict motions were denied. He admitted approaching the group of people but claimed he had no specific purpose for being there. He said he did not mention anything about money; instead, he said he asked about his moped. Williams claimed he saw one person—Brandon Wells—move as though he was reaching for a gun and that Wells had a reputation for carrying weapons. Williams said he heard gunshots and ran behind a car before he could pull out his own gun.

Williams renewed his directed verdict motions after his testimony. The trial court denied them.

The trial court charged the jury on transferred intent. Williams did not object. The jury found Williams guilty as indicted. The trial court sentenced him to concurrent terms of thirty-five years' imprisonment for murder and thirty years' imprisonment for both counts of attempted murder.

## ISSUE

Whether the trial court erred in denying a directed verdict of acquittal on the charge Williams attempted to murder Knox.

## STANDARD OF REVIEW

"On appeal from the denial of a directed verdict, this [c]ourt views the evidence and all reasonable inferences in the light most favorable to the State." *State v. Pearson*, 415 S.C. 463, 470, 783 S.E.2d 802, 806 (2016) (quoting *State v. Butler*, 407 S.C. 376, 381, 755 S.E.2d 457, 460 (2014)). "If the [S]tate has presented 'any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused,' this [c]ourt must affirm the trial court's decision to submit the case to the jury." *State v. Hepburn*, 406 S.C. 416, 429, 753 S.E.2d 402, 409 (2013) (quoting *State v. Cherry*, 361 S.C. 588, 593-94, 606 S.E.2d 475, 478 (2004)). "The case should be submitted to the jury if there is any substantial evidence [that] reasonably tends to prove the guilt of the accused, or from which his guilt may be fairly or logically deduced." *State v. Robinson*, 310 S.C. 535, 538, 426 S.E.2d 317, 319 (1992).

## ANALYSIS

Over the last few years, this court and our supreme court have written several cases about attempted murder. This particular crime often seems to present confusing issues. First, we mention *State v. King*, which held attempted murder is a specific intent crime, in part because attempt criminalizes intent and "it is logically impossible to attempt an unintended result." 422 S.C. 47, 56, 810 S.E.2d 18, 23 (2017) (quoting 22 C.J.S. *Criminal Law: Substantive Principles* § 156, at 221-22 (2016)). Also relevant is *State v. Gerald Rudell Williams*, which vacated a decision from this court that found transferred intent applied to attempted murder. 427 S.C. 148, 158, 829 S.E.2d 702, 707 (2019).

Two of this court's decisions stand for the proposition that transferred intent does not apply to attempted murder. We read these cases as saying that shifting the

defendant's intent to kill from the targeted victim to an injured bystander does not satisfy the specific intent for attempted murder; though the defendant had the specific intent to kill, he did not have the specific intent to kill the bystander. *See State v. Geter*, 434 S.C. 557, 568, 864 S.E.2d 569, 575 (Ct. App. 2021); *State v. James Caleb Williams*, 435 S.C. 288, 299, 867 S.E.2d 430, 436 (Ct. App. 2021). As of now, there are requests in both cases for supreme court review.

We think an illustration shows why the recent decisions from this court are correct in reasoning that transferred intent does not apply to attempted murder. Suppose Peter fires a single shot at Paul in an attempt to kill him. The bullet misses Paul and hits and injures Mary instead. As far as attempted murder is concerned, Peter attempted to murder Paul, not Mary. After all, there is no evidence Peter intended to kill Mary. His intent was to kill Paul.

Some might argue it makes sense to "transfer" the intended victim status from Paul to Mary. We believe the logic of *King* rejects this reasoning. *King* noted it is not possible to specifically intend an unintended result. Peter's specific intent was to kill Paul, not Mary.

Some might argue it is proper to charge attempted murder of both Paul and Mary. We think not. Transferred intent "makes a whole crime out of two halves," *Gerald Rudell Williams*, 427 S.C. at 150, 829 S.E.2d at 702-03—if Mary died, transferred intent would allow Peter's criminal intent to injure Paul to join with his act of injuring Mary and make Peter guilty of Mary's murder. We are not aware of authority supporting the view that transferred intent is a multiplier for increasing liability when an attempted crime is not successful. It would be illogical to say Peter fired a single shot intending to kill *both* Paul and Mary.

Now consider an entirely different hypothetical. This one comes to us from the Supreme Court of California in *People v. Bland*, 48 P.3d 1107 (Cal. 2002). Suppose a villain intends to kill a particular target. The criminal sees the target standing in a group of people, and in an effort to ensure the target's death, the villain shoots multiple times in the group's direction. *Bland* explains that when the villain escalated his attack from a single bullet aimed at the target to a hail of bullets into the group, a factfinder could reasonably infer that the villain concurrently intended to kill multiple people in the immediate vicinity. *Id*. at 1118. To be clear, this is not transferred intent. The villain's primary goal was to kill the target. However, the circumstances also warrant the jury inferring the villain intended to kill others in the vicinity too.

We think this case is like that hypothetical. In the light most favorable to the State, Williams approached a group of people, argued with someone in the group, pointed his gun into the group, and fired at least four shots. He killed one person and injured two others, including Knox.

We think this version of events supports a valid theory of attempted murder. We note that intent to kill—even specific intent to kill—may be shown by circumstantial evidence. *State v. Taylor*, 434 S.C. 365, 862 S.E.2d 924 (Ct. App. 2021) (finding intent to kill may be shown through circumstantial evidence), *cert pending*; *cf. State v. McGowan*, 430 S.C. 373, 381, 845 S.E.2d 503, 507 (Ct. App. 2020) (finding verdict of first degree assault and battery of a child victim was not supported by evidence of specific intent to injure the child when no evidence was presented McGowan knew the child was in the home when McGowan shot in the direction of the home). It is, after all, only natural to infer that when someone shoots at another person, the shooter intends to kill. By the same reasoning, when someone points and fires a deadly weapon multiple times at a group of people he knows are in the line of fire, we believe a rational juror could infer the shooter intended to murder whoever may have been injured in that group. *See Gerald Rudell Williams*, 427 S.C. at 157 n.9, 829 S.E.2d at 707 n.9 (finding the doctrine of transferred intent was unnecessary to uphold Williams' conviction of attempted murder when evidence was presented indicating Williams intended to kill "the figure in the doorway" regardless of whether Williams had premeditated motive to kill that particular person in the doorway); *see also King*, 422 S.C. at 55, 810 S.E.2d at 22 (agreeing with our holding that the State must "prove specific intent to commit murder").

We can think of two things that bear further mentioning. First, we are concerned about attempts to over-read this decision. We do not think, for example, that Williams could be charged with eight counts of attempted murder on the theory that there were eight people in the group. The evidence showed he shot four times, and only three people were injured. As with the reasoning we have already given, attempt crimes ensure the unsuccessful criminal is punished; they are not designed to multiply liability for a failed plan with no regard for the defendant's specific intent. Here, we seek only to recognize that the jury may infer specific intent to kill multiple people if the circumstances allow. If, for example, the evidence was that Williams only intended to kill one person, but placed a bomb outside a building where he knew several people were located, we think common sense dictates he could be charged with the attempted murder of all.

Second, we must note that this "zone of danger" theory is not the theory the State used at trial. We have mixed feelings about affirming when precedent has

subsequently rejected the argument the State took to the jury, but as we noted at the beginning, there was no objection to the jury charges on transferred intent.

Here, we are asked only to review the denial of directed verdict, and we must affirm as long as there is evidence reasonably tending to prove the guilt of the accused. Precedent also counsels that we should affirm as long as the circuit court's ruling is correct, even if the reasoning is not. *State v. Goodstein*, 278 S.C. 125, 128, 292 S.E.2d 791, 793 (1982). We are convinced a jury could properly infer Williams intended to kill Knox based on evidence Williams purposefully directed deadly force at a group of people.

## CONCLUSION

Despite the trial court's erroneous reliance on the doctrine of transferred intent in denying Williams' directed verdict motion, Williams' conviction and sentence for the attempted murder of Knox is

**AFFIRMED.**

**THOMAS and MCDONALD, JJ., concur.**